# United States Court of Appeals
### For the Eighth Circuit

_____

No. 11-3073

_____

John G. Miller, on behalf of himself
and all others similarly situated

*Plaintiff - Appellant*

v.

Redwood Toxicology Laboratory, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: May 17, 2012
Filed: August 23, 2012

_____

Before LOKEN and BEAM, Circuit Judges, and PERRY,[1] District Judge.

_____

BEAM, Circuit Judge.

_____

[1]The Honorable Catherine D. Perry, Chief Judge, United States District Court for the Eastern District of Missouri.

John Miller appeals from the district court's[2] grant of Redwood Toxicology Laboratory's motion to dismiss with prejudice Miller's Minnesota state law claims raised in federal court under the court's diversity jurisdiction. Because Miller lacks Article III standing to raise the state statutory claims in federal court, and because his negligence claim likewise fails under Federal Rule of Civil Procedure 12(b)(6), we affirm the district court's dismissal.

## I.    BACKGROUND

As did the district court, we recite the following facts according to the allegations in the pleadings, including Miller's initial and amended complaints and the record created as a result of Miller's "motion for temporary restraining order, preliminary injunction, [and] expedited discovery," which Miller filed after Redwood filed the instant motion to dismiss. "When considering . . . a motion to dismiss under Fed. R. Civ. P. 12(b)(6)[], the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (internal quotations omitted);[3] see also Illig v. Union Elec. Co., 652 F.3d 971, 976 (8th Cir. 2011).

---

[2]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

[3]While courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned;" without converting the motion into one for summary judgment. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004).

Redwood is a corporation in the business of drug and alcohol screening. One test offered by Redwood is the Ethyl Glucuronide/Ethyl Sulfate (EtG/EtS) Test, often marketed to alcohol abstinence programs such as those of probation offices, as well as to professional license monitoring programs. Miller is a recovering alcoholic currently on supervised probation in Minnesota because of multiple state law criminal penalties incurred as a result of his drinking.

The test at issue screens urine samples for EtG/EtS, which are metabolites of ethanol, and can be found in urine up to three to four days after ethanol is ingested. In addition to beverage alcohol products, ethanol may also be derived from household and food items. EtG/EtS from these common sources are indicated by Redwood as "incidental exposure." To distinguish incidental exposure from intentional drinking in its testing, Redwood establishes a numerical cut-off. As alleged in the complaint, Redwood represents that any test results higher than a cutoff of 100 ng/mL of EtG coupled with 25 ng/mL of EtS, are positive for alcohol, over and above incidental exposure.

According to Miller's complaint, on June 15, 2010, Miller provided a urine sample for testing at Redwood's laboratory at the direction of his probation officer. The test results indicated that Miller's EtG/EtS levels were above a specified cut-off level, which cut-off had been established by the State of Minnesota just as do all agencies that contract with Redwood. Based on these test results, Miller's probation officer filed a violation against him and took Miller into custody. Miller insisted, then and now, that he did not drink alcohol but that his test results were positive because of incidental exposure to alcohol.

At the contested probation violation hearing, each party submitted competing evidence, by way of testimony from a toxicologist (State of Minnesota's expert) and a medical doctor (Miller's expert), as to whether Miller's test results could have been "positive" as a result of incidental exposure. The state court judge concluded that

Miller had presented "credible testimony and evidence about his activities in the days leading up to the June 15, 2010[,] urine test," and that the State failed to meet its burden of proving by clear and convincing evidence that Miller had violated his probation. The court noted Miller's "significant incidental exposure" and ordered that Miller be released immediately–four and one half months after his June 2010 arrest.

Miller subsequently sued Redwood in federal court, initially alleging claims under Minnesota state law that Redwood violated the Minnesota Consumer Fraud Act ("CFA"), Minn. Stat. § 325F.69, subd. 1; as well as additional claims of common-law negligence, fraudulent and negligent misrepresentation, and products liability and breach of warranty claims. Miller alleged that he suffered similar injuries for each claim–that Redwood's alleged misrepresentations resulted in an erroneous probation violation report, detention, and lost income, lost employment, lost liberty and emotional harm. Miller then filed an amended complaint, adding a claim under the Minnesota False Statement in Advertising Act ("FSAA"), Minn. Stat. § 325F.67, and additionally retaining only the CFA and negligence claims. The amended complaint also sought class certification on behalf of Miller and others similarly situated, seeking to vindicate Miller's concern that others, too, had suffered similarly as a result of Redwood's alleged actions. On each claim in the amended complaint, the alleged injuries varied: on count I (false statements in advertising) Miller alleged that he "and countless others, have been harmed as a result"; on count II (consumer fraud act) Miller alleged no specific injury; and on count III (negligence) Miller alleged that he suffered damages including, but not limited to, lost income, lost employment, loss of liberty and emotional harm.

The district court dismissed Miller's amended complaint and his class claims, determining that Redwood's statements were either true or mere "puffery," and thus not actionable at law. The district court thus held that substantively, Miller's allegations failed. The court determined that certain of the challenged representations (that its test is "ideal" for certain situations and is the "most definitive" indicator) are

simply expressions of opinion about the quality or superiority of Redwood's EtG/EtS test, which amounts to mere puffery and are thus not actionable under the Minnesota statutes. The court further held that the "highly accurate" claim by Redwood is not false or misleading. Third, the court noted that Redwood had in fact received the approval of the U.S. Department of Health and Human Services so that claim, too, is not false or misleading. Finally, as to Miller's claim for negligence, the court declined to impose a duty on Redwood beyond the duty to act with reasonable care in the collection and testing of specimens.

Very generally, on appeal, Miller claims that the issues determined by the court at dismissal are best suited for a jury and the court should have deferred to a jury on these issues. Miller additionally claims that the court erroneously applied federal law to two of the issues pending before the court. We, however, view this case from a different vantage point.

## II.    DISCUSSION

### A.    Principles of Constitutional Standing

One critical missing link in this case to-date is a discussion of the federal courts' ability to adjudicate this matter.[4] "[E]very federal appellate court has a special

---

[4]In the normal course, we review de novo a district court's decision to grant a motion to dismiss, accepting all factual allegations in the complaint as true and drawing all inferences in favor of the nonmovant. Blankenship v. USA Truck, Inc., 601 F.3d 852, 853 (8th Cir. 2010); Brooks v. Midwest Heart Group, 655 F.3d 796, 799 (8th Cir. 2011). "At this stage of the litigation, we accept as true all of the factual allegations contained in the complaint, and review the complaint to determine whether its allegations show that the pleader is entitled to relief." Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008). Dismissal is proper where the plaintiffs' complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "The complaint must 'provide a defendant with some indication of

obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it." Arizonans for Official English v. Ariz., 520 U.S. 43, 73 (1997) (alteration in original) (quotation and internal quotations omitted).  Whether there is Article III standing is always an antecedent question.  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-96, 101 (1998).  Accordingly, the threshold question in this matter is whether Miller, the plaintiff below, has standing to sue.  "Article III, § 2, of the Constitution extends the 'judicial Power' of the United States only to 'Cases' and 'Controversies.'" Id. at 102. "[T]he question of standing is whether the litigant is entitled to have the [federal] court decide the merits of the dispute or of particular issues."  Warth v. Seldin, 422 U.S. 490, 498 (1975).  "Standing to sue in any Article III court is, of course, a federal question which does not depend on the party's . . . standing in state court."  Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 804 (1985).

> The irreducible constitutional minimum of standing contains three requirements.  First and foremost, there must be alleged (and ultimately proved) an injury in fact–a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical.  Second, there must be causation–a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant.  And third, there must be redressability–a likelihood that the requested relief will redress the alleged injury.  This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence.

Steel Co., 523 U.S. at 102-04 (internal quotations omitted).

---

the loss and the causal connection that the plaintiff has in mind.'" Schaaf, 517 F.3d at 549 (quoting Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 347 (2005)).

When a plaintiff alleges injury to rights conferred by statute, two separate standing-related inquiries are implicated: whether the plaintiff has Article III standing (constitutional standing) and whether the statute gives that plaintiff authority to sue (statutory standing). Katz v. Pershing, LLC, 672 F.3d 64, 75 (1st Cir. 2012); see also Steel Co., 523 U.S. at 89. Article III standing must be decided first by the court and presents a question of justiciability; if it is lacking, a federal court has no subject-matter jurisdiction over the claim. See Steel Co., 523 U.S. at 92-94. By contrast, statutory standing goes to the merits of the claim. See Bond v. United States, 131 S. Ct. 2355, 2362-63 (2011). The "issue of *statutory* standing . . . has nothing to do with whether there is case or controversy under Article III," Steel Co., 523 U.S. at 97 (emphasis in original), and we are careful not to conflate the two. Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 591-92 (8th Cir. 2009); Red River Freethinkers v. City of Fargo, 679 F.3d 1015, 1023 (8th Cir. 2012) ("The standing inquiry is not . . . an assessment of the merits of a plaintiff's claim.").

> Though all are termed "standing," the differences between statutory, constitutional, and prudential standing are important. Constitutional and prudential standing are about, respectively, the constitutional power of a federal court to resolve a dispute and the wisdom of so doing. Statutory standing is simply statutory interpretation: the question it asks is whether Congress[, or the State,] has accorded *this* injured plaintiff the right to sue the defendant to redress his injury.

Graden v. Conexant Sys., Inc., 496 F.3d 291, 295 (3d Cir. 2007) (emphasis in original) (internal citations omitted).

"State courts may afford litigants standing to appear where federal courts would not, but whether they do so has no bearing on the parties' Article III standing in federal court." Perry v. Brown, 671 F.3d 1052, 1074 (9th Cir. 2012). Accordingly, looking at the particulars of Miller's complaint, it does not measure up to Article III's requirements. The district court articulated that the "core of Miller's CFA and FSAA

claims is the argument that Redwood misleads the public into believing that its EtG/EtS test, with cut-off levels of 100 ng/mL of EtG and 25 ng/mL of EtS, is dispositive as to intentional consumption of beverage alcohol." According to Miller's initial complaint, although wholly omitted from the amended complaint,[5] the alleged injury in fact to Miller and the putative class emerging from the alleged statutory violations is that Redwood's alleged misrepresentations result in erroneous probation violation reports, leading to unwarranted detention, lost income, lost employment, loss of liberty and emotional harm. Even presuming these are concrete injuries contemplated by the amended complaint, and purportedly sufficient for purposes of Article III, the complaint nonetheless fails. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." (alteration and internal quotation omitted)).

Miller's claims falter in federal court on the matter of causation. "When the injury alleged is the result of actions by some third party, not the defendant, the plaintiff cannot satisfy the causation element of the standing inquiry." Katz, 672 F.3d at 76; see also Ariz. Christian Sch. Tuition Org. v. Winn, 131 S. Ct. 1436, 1447-48 (2011). "[T]here must be a causal connection between the injury and the conduct

---

[5]The amended complaint fails to specifically describe the alleged harm resulting from Redwood's alleged misrepresentations, only alleging that "Mr. Miller, and countless others, have been harmed as a result." While we read these allegations liberally, and do not base our dismissal of the action on this basis, it is difficult to articulate the alleged injuries based on such generalities regarding any alleged injury in fact. While "a court should construe the complaint liberally in the light most favorable to the plaintiff," Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008), and "general factual allegations of injury resulting from the defendant's conduct may suffice," Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992), it is still necessary to include some "well-pleaded factual allegations" to support the claim. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

complained of–the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" Lujan, 504 U.S. at 560-61 (alterations in original) (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 41-42 (1976)). Here, we are unable to avoid the proverbial elephant in the room–the State of Minnesota, also referred to as Polk County in Miller's initial complaint.

The Minnesota Supreme Court took the opportunity by way of certified questions in Group Health Plan, Inc. v. Philip Morris Inc., to announce that a strict showing of causation is not required in a damages claim under the Minnesota misrepresentation in sales statutes. 621 N.W.2d 2, 13-14 (Minn. 2001). "[T]he statute requires that there must be some 'legal nexus' between the injury and the defendants' wrongful conduct." Id. at 14. Though relaxed, and proof of individual reliance is not required in all actions, the state court did not elaborate on what particular manner of proof would be necessary to establish the necessary connection under the state statute in Group Health. Id. at 15. However, causation remains a key element of Article III standing. No matter that Miller and the putative class might be able to seek protection under Minnesota law, this does not "vitiate the altogether different requirement of causation" in federal court. Katz, 672 F.3d at 77. Miller must still plausibly allege a direct causal relationship between his detention and other alleged injuries and Redwood's purportedly misleading statements. Id. Miller fails to satisfy this essential prerequisite.

Miller alleges in the amended complaint that "[b]ased solely on the test results, a probation violation was filed against [him] and he was arrested." Reviewing the record before us, however, there is too big a gap for purposes of Article III. Miller's allegation is merely a bare hypothesis and does not adequately trace his alleged injuries to Redwood. Indeed, Redwood did not file a probation violation against Miller. It was the State that filed the probation violation and incarcerated Miller. Too, it was the State that chose the particular test, ultimately established and

-9-

implemented the cut-off levels for the probationers it tested, and interpreted the test results provided by Redwood accordingly. The amended complaint does not and cannot allege a causal connection between Redwood's actions and any presumed injury suffered by Miller sufficient for purposes of Article III. There is no allegation that Miller's alleged injuries are a direct consequence of Redwood's allegedly unlawful conduct. See Red River Freethinkers, 679 F.3d at 1024 (discussing that Article III causation must be fairly traceable to, and a direct consequence of, the alleged unlawful conduct). Redwood's literature instructs that it is very important for its clients to obtain clinical correlation in addition to analyzing any test results. For purposes of Article III, too many factors stand in the way of a direct causal relationship. Miller fails to plausibly assert a direct causal relationship between his alleged injuries and Redwood's purported misrepresentations. That he fails to include any allegations regarding the State's prominent role in all of these injuries is fatal for purposes of Article III.

At bottom, because Miller lacks Article III standing to challenge Redwood's representations in federal court, it is unnecessary for us to resolve whether he had statutory standing.[6] Noted above, a federal court lacks jurisdiction over a case unless the plaintiff has standing to sue under Article III of the Constitution.

---

[6]The district court's analysis of the merits of Miller's claims is ill-suited to their application in the constitutional standing context. We do not reach a discussion of Iqbal or Twombly, nor do we engage in any other similar discussion under the Rule 12(b)(6) rubric, as they deal with a fundamentally different issue. Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) (addressing the pleading required to survive a motion to dismiss for failure to state a claim); Ashcroft v. Iqbal, 556 U.S. 662 (2009) (same). Our focus remains on jurisprudence addressing constitutional standing.

## B.    Common-Law Negligence Claim

Miller also alleges that Redwood abridged his common-law rights–he alleged his injuries occurred because Redwood provided Miller test results that were less than reliable, and "fail[ed] to warn [Miller] of its known [false] positive rate."  On these allegations, Miller has Article III standing.  These injuries are actual, could be traceable to Redwood's alleged acts, and redressable by a verdict in Miller's favor.  Accordingly, the standing requirements are satisfied.  See Lujan, 504 U.S. at 560-61.  The issue, however, of whether Miller's allegations are sufficient to state a cause of action under Rule 12(b)(6) presents a different and distinct matter.  Whether a complaint states a cause of action is a question of law which we review on appeal de novo.  Holden Farms, Inc. v. Hog Slat, Inc., 347 F.3d 1055, 1059 (8th Cir. 2003).

The district court dismissed Miller's negligence claims because the court declined to impose a duty of care on laboratories such as Redwood beyond the duty of reasonable care in the collection and testing of a specimen.  As just noted, Miller alleged in the amended complaint that Redwood owed him a duty to provide test results that were reliable indicators of whether Miller had consumed alcohol as well as a duty to warn Miller of its known false positive rate.  Miller did not allege that Redwood failed to act with reasonable care in the collection or actual testing of Miller's sample.  In this diversity case, Minnesota substantive law applies.  Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Cockram v. Genesco, Inc., 680 F.3d 1046, 1050 (8th Cir. 2012).  However, Minnesota has yet to impose such a duty as that articulated by Miller in this action.  Accordingly, we must predict how the Supreme Court of Minnesota would rule, and "'we follow decisions from the intermediate state courts when they are the best evidence of [Minnesota] law.'"  Cockram, 680 F.3d at 1050 (quoting Eubank v. Kan. City Power & Light Co., 626 F.3d 424, 427 (8th Cir. 2010).  If necessary, we may additionally consider analogous decisions, considered dicta, and any other reliable data.  Gage v. HSM Elec. Prot. Servs., Inc., 655 F.3d 821, 825 (8th Cir. 2011).

We agree with the district court's analysis regarding the extent of Redwood's duty. "Generally, a defendant's duty to a plaintiff is a threshold question because '[i]n the absence of a legal duty, the negligence claim fails.'" Domagala v. Rolland, 805 N.W.2d 14, 22 (Minn. 2011) (alteration in original) (quoting Gilbertson v. Leininger, 599 N.W.2d 127, 130 (Minn. 1999)). Determining whether a duty exists requires an assessment of (1) the relationship of the parties, and (2) the foreseeability of the risk involved. Id. at 23 (noting that a duty to act with reasonable care for the protection of others arises in two instances: (1) "when the defendant's own conduct creates a foreseeable risk of injury to a foreseeable plaintiff," and (2) "when action by someone other than the defendant creates a foreseeable risk of harm to the plaintiff and the defendant and plaintiff stand in a special relationship"). Contrary to Miller's argument, our determination regarding foreseeability is properly decided by the court and does not require jury submission for its resolution. Id. at 27.

As in Domagala, we must first determine whether Redwood owed a duty to Miller in the manner contemplated by this action because Redwood cannot breach a nonexistent duty. Id. at 22. Here, based upon our review of Minnesota case law, and given the State's autonomy discussed above regarding how it uses the test results provided to it by Redwood, we predict that the Minnesota courts would hold that Redwood did not owe Miller a specific duty to warn nor did it owe Miller a general duty of reasonable care, at least not one beyond that of properly handling the tests and accurately detecting and reporting the presence of the metabolites. Id. at 24-26. (discussing Minnesota case law regarding the imposition of a duty to act with reasonable care and the specific duty to warn when a special relationship exists). Accordingly, we affirm the dismissal of Miller's negligence claim.

### C.    Class Certification

One of Miller's prayers for relief sought class certification.  This, however, is a byproduct of this putative class action.  Because the underlying claims fail, so too does the requested class certification.  We thus affirm the district court's ruling dismissing Miller's class claims.

## III.    CONCLUSION

For the reasons stated herein, we affirm the district court's dismissal.

_____