# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-1720

_____

In re: American River Transportation Company, for Exoneration from, or
Limitation of, Liability

*Plaintiff - In re:*

-------------------------------

American River Transportation Company

*Plaintiff - Appellant*

v.

United States of America, Corps of Engineers

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: November 14, 2012
Filed: August 30, 2013

_____

Before RILEY, Chief Judge, WOLLMAN and MELLOY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

American River Transportation Company (Artco) appeals from the district court's order dismissing its limitation complaint.  We reverse and remand.

I.

On March 6, 2011, the M/V Julie White, a towboat owned by Artco, was pushing four barges southbound on the Mississippi River in the vicinity of Lock and Dam 25.  The barges became separated from the M/V Julie White, allided with structures appurtenant to Lock and Dam 25, and then sank.  The United States advised Artco that the barges had caused damage to Lock and Dam 25 and/or the structures appurtenant to it.

Artco salvaged and removed the sunken barges from the Mississippi River. Artco then filed a complaint seeking exoneration from, or limitation of liability for, claims arising from the allision pursuant to the Limitation of Shipowners' Liability Act, 46 U.S.C. §§ 30501-12 (the Limitation Act).  In accordance with the Limitation Act, Artco sought to limit its liability to the value of the M/V Julie White, the four barges, and their freight, which Artco alleged had a total value of $1,322,837.85.  The district court entered an order approving Artco's posted security, enjoining the prosecution of any suits related to the allision, and requiring Artco to provide notice to potential claimants advising them of the limitation action.

Artco provided notice to the United States of the limitation action.  This notice mirrored the requirements of Federal Rule of Civil Procedure Supplemental Rule F(5).  It informed the United States that as a potential claimant, if it wished to contest Artco's right to exoneration or limitation, it was required to file a proof of claim and answer to the limitation complaint by June 15, 2011.  The United States did not file a proof of claim or answer.  Instead, it appeared in the limitation action and filed a motion to dismiss the complaint under Rule 12(b)(6), arguing that its claims under the

Rivers and Harbors Act, 33 U.S.C. §§ 401-76, were not subject to limitation under the Limitation Act.

The district court agreed, holding that the government could seek an implied *in personam* cause of action under § 408 of the Rivers and Harbors Act and that such an action was not subject to the Limitation Act. See D. Ct. Order of Mar. 12, 2012, at 11. Because the government was the only potential claimant to Artco's limitation action, the district court dismissed the limitation complaint.

II.

Artco contends that the district court erred by entertaining the motion to dismiss the limitation complaint because the government lacked standing and by concluding that § 408 of the Rivers and Harbors Act provided an implied *in personam* cause of action.

The Limitation Act, formerly 46 U.S.C. § 183, permits a vessel owner to file a complaint to limit its liability in the case of an accident and states that "the liability of the owner of a vessel for any claim, debt, or liability described in subsection (b) shall not exceed the value of the vessel and pending freight" when the loss or damage occurs "without the privity or knowledge of the owner." 46 U.S.C. § 30505(a), (b). For an explanation of the history and purpose of the Limitation Act, see Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 446-48 (2001).

When first passed, the Limitation Act "did not establish a procedure to implement the limitations on liability that it established." Am. Milling Co. v. Brennan Marine, Inc., 623 F.3d 1221, 1224 (8th Cir. 2010). "[T]he Supreme Court enacted rules to establish a uniform judicial procedure by which a vessel owner could seek to limit its liability under the Limitation Act. Over time, these rules were amended and relabeled, and Rule F was eventually adopted as part of the Federal

Rules of Civil Procedure." Id. (internal citations omitted). "As other courts have explained, 'Rule F evolved as a procedural device to implement the [Limitation Act].'" Id. (quoting Bouchard Transp. Co., Inc. v. Updegraff, 147 F.3d 1344, 1347 (11th Cir. 1998) (alteration in original)). Under Rule F(5), any claimant who wishes to contest a vessel owner's "right to exoneration from or the right to limitation of liability" must file a proof of claim and an answer to the complaint, unless the claim has included an answer.

Artco contends that the district court erred by allowing the government to file its motion to dismiss the limitation complaint without first filing a proof of claim and answer in accordance with Federal Rule of Civil Procedure Supplemental Rule F(5). The government argues that its claim under the Rivers and Harbors Act is not subject to the Limitation Act and that it is therefore not required to follow the procedural steps established in Rule F(5). The district court held that the government's claim was not subject to the Limitation Act, and implicitly rejected Artco's argument that the government was nevertheless required to comply with the procedural steps outlined in Rule F(5) prior to filing its motion to dismiss. See D. Ct. Order of Mar. 12, 2012, at 11. Rule F(5) is part of the Federal Rules of Civil Procedure, and we review the district court's interpretation of the rule *de novo*. Am. Milling, 623 F.3d at 1224.

"Admiralty and maritime law includes a host of special rights, duties, rules, and procedures." Lewis, 531 U.S. at 446. As discussed above, Rule F was created to implement the Limitation Act. See Am. Milling, 623 F.3d at 1224. After notice of a limitation complaint is issued either by publication or directly by mail, Rule F(5) provides the process by which potential claimants must proceed.

> Claims shall be filed and served on or before the date specified in the notice provided for in subdivision (4) of this rule. Each claim shall specify the facts upon which the claimant relies in support of the claim,

the items thereof, and the dates on which the same accrued. If a claimant desires to contest either the right to exoneration from or the right to limitation of liability the claimant shall file and serve an answer to the complaint unless the claim has included an answer.

Fed. R. Civ. P. Supp. R. F(5).

Artco contends that a party does not have standing to appear in a limitation proceeding and file a motion to dismiss the limitation complaint unless it first complies with the requirements of Rule F(5). The government contends that it has Article III standing, which is all that is required. Although Article III establishes the "irreducible constitutional minimum of standing," Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992), a party may also be subject to prudential and statutory standing requirements, see Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 933-34 (8th Cir. 2012).

The Federal Rules of Civil Procedure Supplemental Rules C and G have been deemed to create statutory standing requirements for challenging forfeiture actions. See, e.g., United States v. 8 Gilcrease Lane, 638 F.3d 297, 298 n.1 (D.C. Cir. 2011) (stating that a verified claim under Supplemental Rule C(6) is essential to conferring statutory standing upon a claimant in a forfeiture action); United States v. $22,050.00, 595 F.3d 318, 323 n.5 (6th Cir. 2010) (stating that strict compliance with Supplemental Rule G is a prerequisite for statutory standing to challenge a forfeiture action); United States v. $148,840.00, 521 F.3d 1268, 1273 n.3 (10th Cir. 2008) (stating that Supplemental Rule C(6) serves as the requirement for statutory standing in a forfeiture action); United States v. $487,825.00, 484 F.3d 662, 664 (3d Cir. 2007) ("In order to stand before a court and contest a forfeiture, a claimant must meet both Article III and statutory standing requirements. To establish statutory standing in a forfeiture case, the claimant must comply with the procedural requirements set forth in Rule C(6)(a) and § 983(a)(4)(A)." (internal citation omitted)); United States v. $103,387.27, 863 F.2d 555, 560-61 n.10 (7th Cir. 1988) (noting that forfeiture actions

-5-

require Article III and statutory standing and that statutory standing is satisfied by meeting the requirements of Supplemental Rule C(6)); United States v. $38,000.00, 816 F.2d 1538, 1545 (11th Cir. 1987) ("The Supplemental Rules govern judicial forfeiture proceedings and establish the statutory standing requirements for these actions."); see also United States v. Lot 65 Pine Meadow, 976 F.2d 1155, 1157 (8th Cir. 1992) (although not invoking the term "statutory standing," holding that a party "lacked standing to contest the forfeiture" because he had failed to file a timely claim in accordance with Rule C(6)).

Similarly, we conclude that Rule F(5) creates statutory standing requirements for challenging limitation actions. The purpose of Rule F(5), much like that of Rules C(6) and G(5), is to bring all potentially interested parties into one proceeding to address competing claims to certain property. Compare United States v. Three Parcels of Real Property, 43 F.3d 388, 392 (8th Cir. 1994) ("The purpose of Rule C(6) is to inform the court that there is a claimant to the property who wants it back and intends to defend it." (internal quotation marks omitted)), with White v. Sabatino, 415 F. Supp. 2d 1163, 1180 (D. Haw. 2006) ("The purpose of [Rule F(5)] is to consolidate all pending and potential claims against the owner of the vessel in one Limitation proceeding."). Likewise, an examination of Rule F demonstrates that it provides a structure and procedures that are similar to those provided by Rules C and G.[1] Moreover, although not explicitly declaring the claim requirement of Rule F(5)

---

[1]Admittedly, the language in Rule F(5) differs from that of current Rules C(6) and G(5), but the former version of Rule C(6) contained language similar to Rule F(5). Compare Fed. R. Civ. P. Supp. R. F(5) (2013) ("Claims shall be filed and served on or before the date specified in the notice provided for in subdivision (4) of this rule. Each claim shall specify the facts upon which the claimant relies in support of the claim, the items thereof, and the dates on which the same accrued. If a claimant desires to contest either the right to exoneration from or the right to limitation of liability the claimant shall file and serve an answer to the complaint unless the claim has included an answer."), with Former Fed. R. Civ. P. Supp. R. C(6) (1992) ("The claimant of property that is the subject of an action in rem shall file a claim within 10

a statutory standing requirement, several decisions have implicitly addressed it in this manner. See, e.g., In re Triton, 719 F. Supp. 2d 753, 757-58 (S.D. Tex. 2010) (potential claimants who had not filed claims under Rule F(5) lacked standing to seek dismissal of the limitation action); In re Lenzi, Civ. A. No. 89-4571, 1989 WL 146659, at *1 (E.D. Pa. Dec. 1, 1989) (concluding that party who filed an answer and a motion for summary judgment in a limitation complaint, but not a proper claim under Rule F(5), lacked standing to contest the right to limitation or exoneration). Accordingly, we conclude that filing a claim in accordance with Rule F(5) is a statutory standing requirement.

Furthermore, we reject the government's contention that this requirement is inapplicable when the claim at issue is not subject to the Limitation Act. In support of this proposition, the government relies primarily upon United States v. CF Industries, Inc., 542 F. Supp. 952, 956 (D. Minn. 1982), in which limitation complaints were filed by the respective owners of a barge and a tug involved in an accident on the Mississippi River. Id. at 953-54. The actions were consolidated and transferred to the United States District Court for the Southern District of Illinois. Under the limitation proceedings, injunctions were issued enjoining the commencement and prosecution of any and all suits, actions, or proceedings related to the accident at issue in the limitation complaints. Id. at 954. Notwithstanding the injunctions, the government filed an action under the Clean Water Act (CWA) in the United States District Court for the District of Minnesota. The limitation plaintiffs filed motions to dismiss, contending that the government's claim was subject to the Limitation Act. Id.

---

days after process has been executed, or within such additional time as may be allowed by the court, and shall serve an answer within 20 days after the filing of the claim."). Former Rule C(6)'s similar language was also deemed to create standing requirements. See Lot 65 Pine Meadow, 976 F.2d at 1157; United States v. One Dairy Farm, 918 F.2d 310, 311-13 (1st Cir. 1990).

The district court held that the government's claim under the CWA was not subject to the Limitation Act and thus could be filed outside the limitation proceeding. Id. at 956. The limitation plaintiffs argued further that although the claims were not subject to the Limitation Act, the government was still obligated to request relief from the injunctions granted in the limitation proceedings before directly filing its action in the District of Minnesota. The district court rejected this argument as well, concluding:

> Although the United States has at times followed such a procedure, . . . it is not required to do so. The injunctions entered in the limitation actions were based on the authority of Supplemental Admiralty Rule F(3), and therefore were limited to enjoining "any claim subject to limitation in the action." Because the claim for the statutory penalty was not subject to limitation in the action, it falls beyond the scope of the injunctions. In addition, requiring the United States to initially enter the limitation actions would require the United States to go through costly, time consuming and unnecessary proceedings. Such a requirement would serve no purpose while unduly complicating the proceedings.

Id. at 956-57 (internal citations omitted).

Even assuming that the government's potential Rivers and Harbors Act claim is not subject to the Limitation Act, CF Industries does not lend support to the government's position. Contrary to the government's argument, the above-cited discussion in CF Industries does not permit the government to intervene in a limitation proceeding without following the requirements established in Rule F. CF Industries and similar cases demonstrate only that the government need not appear in the limitation proceeding at all to assert its claims when those claims are not subject to the Limitation Act; it has no bearing on whether Rule F(5)'s claim requirement applies when a party does appear in a limitation action and attempts to contest the limitation complaint. See,e.g., In re Complaint of Metlife Capital Corp., 132 F.3d 818, 821-24 (1st Cir. 1997) (concluding that claims under the Oil Pollution

-8-

Act were not subject to the Limitation Act or Rule F, and thus the claims could be filed in a collateral proceeding without abiding by the procedures set forth in Rule F).

Because the government chose to appear in the limitation action to contest the complaint, it was required to demonstrate that it had the requisite standing to do so. In this case, the government did not have statutory standing because it failed to file a claim in accordance with Rule F(5). The district court thus erred by entertaining the government's motion to dismiss the limitation complaint. Because we conclude that the government was without standing, we need not address the merits of the government's motion to dismiss, *i.e.*, whether § 408 of the Rivers and Harbors Act provides an *in personam* cause of action.

## III. Conclusion

We reverse the district court's order dismissing Artco's limitation proceeding and remand the case to the district court for further proceedings in accordance with the views set forth in this opinion.

RILEY, Chief Judge, dissenting.

Because I agree with the district court's well-reasoned decision, I respectfully dissent.

## A. Injunction

The majority correctly recognizes "that the government need not appear in [a] limitation proceeding at all to assert its claims when those claims are not subject to the Limitation Act," ante at 8, but incorrectly implies that the government's appearance in *this* limitation proceeding was, therefore, futile. The actual language used in the limitation injunction issued in this case states:

-9-

IT IS . . . ORDERED that notice be given to *all* persons asserting *any* claims with respect to the [March 6, 2011 allision] in which the *United States of America*[] claims to have sustained damage to structures appurtenant to Lock and Dam 25. The court further admonishes all such parties to file their respective claims with the Clerk of this Court . . . on or before the 15th day of June, 2011; and

. . .

IT IS FURTHER ORDERED . . . that the institution and/or prosecution of *any suits, actions or legal proceedings of any nature or description whatsoever in any court whatsoever*, against [Artco] and/or the M/V Julie White in respect of any claim arising out of or connected with the [March 6, 2011 allision], except in *this proceeding*, are hereby stayed and restrained.

(Emphasis added).

Far from leaving the government free to initiate a suit "not subject to the Limitation Act," ante at 8, in a different proceeding, the all-encompassing language of the injunction prohibited the government from doing so except in "this proceeding." The injunction prohibited collateral *in personam* proceedings against Artco and *in rem* proceedings against the Julie White, enjoining all claims "whatsoever." This language was so sweeping the government reasonably could conclude the injunction applied to claims under 33 U.S.C. § 408. Rather than "'serv[ing] no purpose while unduly complicating the proceedings,'" ante at 8 (quoting United States v. CF Indus., Inc., 542 F. Supp. 952, 957 (D. Minn. 1982)), the government's participation in this case served the purpose of freeing the government

from a burdensome injunction[2] and of eliminating the prospect of unduly complicated collateral proceedings.[3]

## B.    Standing

Even though the injunction placed a substantial burden on the government, the majority concludes the government lacked statutory standing to challenge the injunction.  I disagree.

### 1.    Statutory Standing

There is an elemental flaw in the majority's "conclu[sion] that [Federal Rules of Civil Procedure Supplemental] Rule F(5) creates *statutory* standing requirements for challenging limitation actions."  Ante at 6 (emphasis added).  Rule F(5) is not a *statute*.  It is a court-created procedural *rule*.  See 28 U.S.C. § 2072(a) ("The Supreme Court shall have the power to prescribe general *rules* of practice and procedure." (emphasis added)); Sibbach v. Wilson & Co., 312 U.S. 1, 9-10 (1941) ("Congress has undoubted power to regulate the practice and procedure of federal courts, and may exercise that power by delegating to this or other federal courts authority to make *rules* not inconsistent with the *statutes* or Constitution of the United States." (emphasis added) (footnotes omitted)); cf., e.g., Black's Law Dictionary 1448 (8th ed. 2004) (defining "statute" as "[a] law passed by a *legislative* body" (emphasis added)).  A specific statute provides that Rule F(5), like any other procedural rule, "*shall not*

_____

[2]That is an injunction which exceeded the district court's authority under the Limitation Act, 46 U.S.C. §§ 30501-30512.  Compare District Court Order, March 29, 2011, at 2 (enjoining *in rem* suits against "the M/V Julie White"), with 46 U.S.C. § 30505 (limiting only the *in personam* liability of "the *owner* of a vessel" (emphasis added)).

[3]This is not to say the government was *required* to intervene before filing a collateral suit under 33 U.S.C. § 408, but it was certainly reasonable and appropriate for the government to do so given the risk of contempt proceedings if it ignored and then violated the injunction.

-11-

abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b) (emphasis added). "[I]t is axiomatic that the Federal Rules of Civil Procedure do *not* create or withdraw federal jurisdiction." Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 370 (1978) (emphasis added).

Though sharing the term "standing" with its Article III counterpart, statutory standing "has nothing to do with whether there is a case or controversy under Article III." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 97 (1998). Rather, "statutory standing goes to the merits of the claim." Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 934 (8th Cir. 2012). Statutory standing asks only "whether *this* plaintiff has a cause of action under the statute." Steel Co., 523 U.S. at 97 n.2; see also In re Athens/Alpha Gas Corp., 715 F.3d 230, 235 (8th Cir. 2013) ("[B]ecause the merits inquiry and the statutory standing inquiry often overlap, . . . it would be artificial to draw a distinction between the two."). Thus, "'[s]tatutory standing is simply statutory interpretation.'" Miller, 688 F.3d at 934 (quoting Graden v. Conexant Sys., Inc., 496 F.3d 291, 295 (3d Cir. 2007)). *Statutory* standing depends on the *statute*.

The majority analogizes the "purpose," "structure[,] and procedures" of Rule F(5) to those of Rule G(5) and former Rule C(6).[4] Ante at 6. The majority's analogy ignores the critical distinction between Rule F(5) and these rules. Existing Rule G(5) and former Rule C(6) reflect statutory standing flowing from actual statutes. See 18 U.S.C. § 983(a)(4)(A); 21 U.S.C. § 881(d). Rule G(5) and former Rule C(6) do not create statutory standing requirements independent from these statutes. See Via Mat Int'l S. Am. Ltd. v. United States, 446 F.3d 1258, 1264 (11th Cir. 2006) (explaining "[s]tatutory standing under Rule C(6) is not inherent to all forfeiture actions; it is only

---

[4]"The *in rem* forfeiture Supplemental Rules were renumbered in 2006. The provisions that are now located in Rule G were previously located in Rule C(6). Thus, the older cases discuss adherence to Rule C(6)." United States v. $22,050.00, 595 F.3d 318, 322 n.4 (6th Cir. 2010).

-12-

required *if specifically invoked by statute*" (emphasis added)); see also, e.g., United States v. $487,825.00, 484 F.3d 662, 664 (3d Cir. 2007) ("To establish statutory standing in a forfeiture case, the claimant must comply with the procedural requirements set forth in Rule C(6)(a) and § 983(a)(4)(A)."); United States v. $38,000.00, 816 F.2d 1538, 1545 n.13 (11th Cir. 1987) (holding "judicial forfeitures are governed by the Supplemental Rules" because of § 881(d)). Rule G(5) and former Rule C(6) are procedural rules which alone cannot create statutory requirements. It is only because these rules apply the statutory requirements of 18 U.S.C. § 983 and 21 U.S.C. § 881 that a non-compliant claimant lacks statutory standing in forfeiture proceedings.

By contrast, nothing in the Limitation Act mandates compliance with Rule F(5). The Limitation Act does contain certain statutory standing requirements. See, e.g., 46 U.S.C. § 30511. But adherence to Rule F(5) is not one of them, which means Rule F(5) remains an ordinary procedural rule. It can neither confer nor withdraw statutory standing.

## 2. Standing To Challenge An Injunction

Even if the majority were correct that the government's decision not to file a claim under Rule F(5) meant the government was not a party to the limitation proceeding, it is well established that "[a] nonparty normally has standing to appeal when it is adversely affected by an injunction." In re Piper Funds, Inc., Institutional Gov't Income Portfolio Litig., 71 F.3d 298, 301 (8th Cir. 1995); see also Devlin v. Scardelletti, 536 U.S. 1, 6-9, 14 (2002) (holding nonparty class members bound by a settlement order "have the power to bring an appeal without first intervening"). As there is no doubt the government had standing to *appeal* the limitation injunction without subjecting itself to Rule F(5)'s cumbersome requirements for becoming a "party," it makes no sense that the government would lack similar standing to challenge the injunction in the district court, especially given this court's distaste for

-13-

claims first litigated on appeal. See, e.g., Orr v. Wal-Mart Stores, Inc., 297 F.3d 720, 725 (8th Cir. 2002).

The weight of circuit precedent agrees. See, e.g., Samnorwood Indep. Sch. Dist. v. Tex. Educ. Agency, 533 F.3d 258, 266 (5th Cir. 2008) (determining a nonparty had standing to bring a declaratory judgment challenging an injunction "because the equitable relief granted by the district courts placed a burden on the challenging party which gave them a personal stake in the litigation"); United States v. Kirschenbaum, 156 F.3d 784, 794 (7th Cir. 1998) ("[N]on-parties who are bound by a court's equitable decrees have a right to move to have the order dissolved, and other circuits have held that where a non-party is purportedly bound by an injunction, the non-party may bring an appeal rather than face the possibility of a contempt proceeding." (internal citation omitted)); In re Estate of Ferdinand Marcos Human Rights Litig., 94 F.3d 539, 544 (9th Cir. 1996) (deciding a nonparty had standing where an injunction presented the nonparty "with the choice of either conforming its conduct to the dictates of the injunction or ignoring the injunction and risking contempt proceedings").

Because the limitation injunction gave the government the choice of appearing in "this proceeding" or risking uncertain collateral litigation, Artco essentially "'haled [the government] into district court despite [the government's] objections.'" Piper, 71 F.3d at 301 (quoting SEC v. Wencke, 783 F.2d 829, 834 (9th Cir. 1986)). Therefore, regardless of Rule F(5), "[e]quitable considerations clearly warrant giving standing" to the government to challenge the injunction in the district court. Id.

### 3.    Rule F(5)

Even if a non-statutory procedural rule could deprive the government of statutory standing, Rule F(5) would not do so in this case.

First, by its plain terms, Rule F(5) applies only to those filing claims in the *limitation action*. The first two sentences of the rule specify the requirements for asserting a claim in the limitation action, and the final sentence, like the preceding sentence, expressly applies only to "*claimant[s]*," establishing the procedure for those who have asserted "claims" in the limitation action but also wish to "contest either the right to exoneration from or the right to limitation of liability." Fed. R. Civ. P. Supp. R. F(5) (emphasis added). The purpose of Rule F(5) plainly is to ensure that an individual who chooses to file a claim under Rule F is not thereby barred from contesting the propriety of the limitation action. Nothing in Rule F bars a person who has *not* asserted a claim in the limitation action (i.e., a person who is not a "claimant") from "contest[ing] either the right to exoneration from or the right to limitation of liability" without filing a claim or answer.

Of course, a non-claimant may not challenge the propriety of a limitation action without having some minimum connection to the case. But the government's minimum connection here is not Rule F(5), it is Article III and 33 U.S.C. § 408. Rule F(5) can no more destroy the standing of one who has suffered an "injury in fact" which is "causal[ly] connect[ed]" to the "conduct complained of" and "likely" to "be redressed by a favorable decision," than it can confer standing on one who seeks a "speculative" remedy for a "conjectural" injury caused by "the independent action of some third party." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal quotations and citations omitted).

Second, a Rule 12(b)(6) motion to dismiss "must be made *before* pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b)(6) (emphasis added). If Rule F(5) required the government to file an answer (i.e., a responsive pleading) before filing a Rule 12(b)(6) motion, as the majority suggests, then the government could *never* file a Rule 12(b)(6) motion. Such an interpretation of Rule F(5) would give vessel owners free reign to commence limitation actions with ill-pled complaints. Cf.

-15-

Fed. R. Civ. P. Supp. R. G(5)(b) (requiring a claimant to file "an answer to the complaint *or a motion under Rule 12*" (emphasis added)).

Although the Supplemental Rules contain numerous specific pleading requirements, see, e.g., Fed. R. Civ. P. Supp. R. B(1)(a), C(2), the Supplemental Rules contain no indication that admiralty and maritime claims are exempt from general federal pleading rules, see Fed. R. Civ. P. 8. To the contrary, "[t]he Federal Rules of Civil Procedure also apply to [admiralty and maritime claims] except to the extent they are inconsistent with the[] Supplemental Rules." Fed. R. Civ. P. Supp. R. A(2). Rule F(2)'s specific pleading requirements are in no way inconsistent with Rule 8(a)'s general requirements. A complaint filed under Rule F(2) must contain "enough heft to 'sho[w] that the pleader is entitled to relief,'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007) (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). And Rule 12(b)(6) authorizes motions to dismiss for "failure to state a claim upon which relief can be granted," permitting the government to test the legal sufficiency of the pleadings contained "within the four corners of [the] complaint." Ashcroft v. Iqbal, 556 U.S. 662, 674 (2009). Challenging the legal sufficiency of Artco's complaint is precisely what the government sought to do in this case.[5] Nothing in Rule F could deny the government standing to do so.

_____

[5]The best reading of Rule F(5), which harmonizes Rule F with Rule 8 and the "well-pleaded complaint" requirement, Twombly, 550 U.S. at 556-57, is that an answer is required to contest whether there is a genuine factual dispute related to "the right to exoneration from or the right to limitation of liability"—akin to a motion for summary judgment—whereas an answer is not required to contest whether the Rule F(2) complaint, based solely on the assertions contained therein, is sufficient "to state a claim to relief that is plausible on its face," Twombly, 550 U.S. at 570.

**C.    Conclusion**

Because (1) the government had standing to challenge the limitation injunction by moving to dismiss under Rule 12(b)(6) and (2) the government's 33 U.S.C. § 408 claim against Artco is not subject to the Limitation Act,[6] I would affirm.

---

[6]The district court's conclusion that 33 U.S.C. § 408 gives the government an *in personam* remedy against Artco was a straightforward application of <u>Wyandotte Transp. Co. v. United States</u>, 389 U.S. 191 (1967), consistent with the relevant agency's regulations, <u>see</u> 33 C.F.R. § 209.170(e), and our court's longstanding practice, <u>see</u>, <u>e.g.</u>, <u>United States v. Capital Sand Co.</u>, 466 F.3d 655, 658 (8th Cir. 2006) (affirming § 408 liability against a vessel owner); <u>United States v. Am. Commercial Barge Line Co.</u>, 988 F.2d 860, 861-62 (8th Cir. 1993) ("Under the Rivers and Harbors Act of 1899, the Company is strictly liable for the damage the [vessel] and its barges caused to the gate.  This point was never contested."); <u>United States v. Logan & Craig Charter Serv., Inc.</u>, 676 F.2d 1216, 1219 (8th Cir. 1982) ("It is well recognized that private parties are strictly liable for damage to works protected under section 408.").