United States Court of Appeals
For the Eighth Circuit

_____

No. 24-1894
_____

Matthew Mungai

*Plaintiff - Appellant*

v.

University of Minnesota

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: March 18, 2025
Filed: June 26, 2025
_____

Before COLLOTON, Chief Judge, ERICKSON and GRASZ, Circuit Judges.
_____

ERICKSON, Circuit Judge.

Matthew Mungai sued the University of Minnesota claiming that he was discriminated against while he was a student at the school. In his amended complaint, Mungai asserted claims under Title VI, Title IX, 42 U.S.C. §§ 1981 and 1983, the Minnesota Human Rights Act ("MHRA"), the Fourteenth Amendment to

the United States Constitution, and negligence. The district court[1] granted the University's motion to dismiss. For the following reasons, we affirm.

## I. BACKGROUND

Mungai is a Black man of Kenyan origin who began attending the University in 2019 and eventually graduated. In his amended complaint, Mungai alleged multiple incidents of racial harassment perpetrated by University students or staff that occurred over a three-year period. Because this case is at the motion to dismiss stage, we assume the facts alleged in the amended complaint are true. Collins v. Metro. Life Ins. Co., 117 F.4th 1010, 1016 n.3 (8th Cir. 2024). We thus recount the facts as alleged by Mungai.

In February 2020, while Mungai and his white supervisor served food at a hockey game, the supervisor stated: "Dark people are so out of place at hockey games. They don't belong here." In March 2021, several white students pulled up to Mungai's car and made guns with their fingers while making "pew pew pew" sounds. In April, in business class, a white student called Mungai "nig" and said that he was "dirty and ugly." In his computer science class that same month, a white student discussed "racial events" that "centered around" Mungai "almost daily."

In July 2021, students called Mungai "dirty, blackie, and monkey" when he left his on-campus residence. In August, at an unspecified location on campus, a white student told Mungai "nigga u gon' die." In October, at the O'Hare International Airport while travelling for a University-sponsored event, white students told Mungai that he had AIDS and was "dirty, a dirty nigger, and ugly."

From September 2021 through May 2022, Mungai claimed students subjected him to "daily" racial slurs on campus including calling him a "dirty nigger." Also

---

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

in the September 2021 through May 2022 period, Mungai alleged students and staff mimed shooting at him with their fingers.

Mungai alleged that he reported something about these incidents to "University staff," "class staff," or to the Student Conflict Resolution Center ("SCRC"). In the body of the amended complaint, he did not allege when he reported the incidents or the content of the reports. In an exhibit to his amended complaint, a letter from the University ("EO Letter") stated Mungai filed reports with its Equal Opportunity & Title IX office between July 26, 2023 and September 7, 2023. Mungai filed this lawsuit on May 1, 2023.

The district court denied Mungai's multiple motions to amend and granted the motion to dismiss on all counts after determining that the amended complaint failed to state a claim. Mungai appealed, and in his *pro se* opening brief, the only count he meaningfully argues the district court should not have dismissed is his Title VI claim. We granted leave for Mungai to file a counseled supplemental brief and for the University to respond to the counseled brief. Mungai's counsel reiterated that the district court should not have dismissed his Title VI claim and challenged the district court's decision to dismiss with prejudice his claims under Title VI, the MHRA, the Fourteenth Amendment, and § 1983. Accordingly, we deem waived any challenge to the district court's dismissal of Mungai's other claims. See Davis v. City of Little Rock, 122 F.4th 326, 332 n.2 (8th Cir. 2024) (any argument not raised in the opening brief is waived).

## II.    DISCUSSION

We review the district court's grant of a motion to dismiss *de novo*. Doe v. Univ. of Ark. – Fayetteville, 974 F.3d 858, 864 (8th Cir. 2020). To survive a motion to dismiss, the complaint must provide enough facts to state a claim that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The plaintiff achieves facial plausibility when the complaint includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While we liberally construe a *pro se* complaint, it must still contain sufficient facts supporting the claims. Sandknop v. Mo. Dep't of Corrs., 932 F.3d 739, 741 (8th Cir. 2019).

A.     Title VI

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. For Title VI claims of intentional discrimination by the recipient of federal funds, we have borrowed the McDonnell Douglas paradigm from Title VII. Murguia v. Childers, 81 F.4th 770, 774-75 (8th Cir. 2023). In this case of harassment by students and staff, the district court applied the deliberate indifference standard used for third party harassment claims under Title IX. The standard applicable to Title VI third party harassment claims is a question of first impression in our circuit.

The Supreme Court has twice considered federal recipient liability for harassment by third parties under Title IX. See Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 633 (1999) (harassment by classmate); Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 277 (1998) (harassment by teacher). The Court observed that Title IX attaches conditions to the award of federal funds, which essentially creates a contract between the government and the recipient. Gebser, 524 U.S. at 286. This contractual relationship distinguishes Title IX from Title VII, which is an outright prohibition on discrimination. Id.

When Congress places conditions on the award of federal funds under the Spending Clause of the Constitution, private actions for monetary damages based on noncompliance with any condition are carefully scrutinized. Id. at 287. A recipient of federal funds must be on notice that it will be liable. Id. (quoting Franklin v. Gwinnett Cnty. Pub. Schs., 503 U.S. 60, 74 (1992)). The constructive notice permitted under Title VII is insufficient under Title IX. Id. at 287-88. To address

this notice concern, the Court adopted the deliberate indifference standard for third party harassment claims under Title IX. Davis, 526 U.S. at 643; Gebser, 524 U.S. at 290.

As with Title IX, Congress enacted Title VI under the Spending Clause of the Constitution. Gebser, 524 U.S. at 287. Indeed, Congress modeled Title IX after Title VI. Id. at 286. The Supreme Court's concerns that form the basis for the actual notice requirement apply equally to claims under Title VI for harassment by third parties.

Recognizing the similarities between Title IX and Title VI, other circuits to consider third party harassment under Title VI have adopted the deliberate indifference standard. Ricketts v. Wake Cnty. Pub. Sch. Sys., 125 F.4th 507, 521 (4th Cir. 2025); Adams v. Demopolis City Schs., 80 F.4th 1259, 1273 (11th Cir. 2023); Fennell v. Marion Indep. Sch. Dist., 804 F.3d 398, 408 (5th Cir. 2015); Doe v. Galster, 768 F.3d 611, 617 (7th Cir. 2014); Zeno v. Pine Plains Cent. Sch. Dist., 702 F.3d 655, 665 (2d Cir. 2012); Bryant v. Indep. Sch. Dist No. I-38 of Garvin Cnty., 334 F.3d 928, 934 (10th Cir. 2003). We find the reasoning in these cases persuasive and adopt the deliberate indifference standard for claims involving third party harassment under Title VI.

For the University to incur liability under Title VI, it must be (1) deliberately indifferent (2) to known acts of harassment (3) that occurred at a location and by an individual under its control. Davis, 526 U.S. at 646-47. Deliberate indifference is a high standard. Id. at 643. The harassment must be so severe, pervasive and objectively offensive that it deprives the victim of "access to the educational opportunities or benefits provided by the school." Id. at 650. The plaintiff must provide notice of the harassment to an "appropriate person," which means "an official of the recipient entity with authority to take corrective action to end the discrimination." Gebser, 524 U.S. at 290.

For the majority of the incidents of racial harassment, Mungai alleges that he reported to "University staff" or "class staff." His amended complaint fails to allege the identity of the staff member, whether the staff member was an official with authority to take corrective action, the content of the report to the staff member, when he made the report, and any actions taken following the report. While we liberally construe *pro se* complaints, Mungai's references to reports to "staff" in the amended complaint fail to plausibly allege that he reported incidents of third party harassment to an appropriate person.

Mungai also alleges he reported one incident of racial harassment to the SCRC. This allegation similarly fails to allege the content of the report, when he made the report, and any actions taken following the report. Additionally, the SCRC and its staff are not officials with authority to take corrective action. See Information for Students, https://sos.umn.edu/students (last visited Apr. 11, 2025) ("SCRC is a student services fee-funded organization that operates free from University interference.").[2] Students are also informed that matters discussed with the SCRC are not communicated to the University. See id. ("The Student Conflict Resolution Center is not an office of notice within the University community.").

As the EO Letter demonstrates, Mungai knows how to submit a report of alleged racial harassment to the University's Equal Opportunity & Title IX office. But he did not submit these complaints until after he filed this lawsuit and after he graduated. Because Mungai failed to plausibly allege that the University had actual knowledge of discrimination, his Title VI claim fails. See K.T. v. Culver-Stockton Coll., 865 F.3d 1054, 1059 (8th Cir. 2017) (finding no Title IX claim under the deliberate indifference standard when the plaintiff failed to allege the school had actual knowledge).

---

[2]A court may consider some materials that are part of the public record under Rule 12(b)(6). Miller v. Redwood Toxicology Lab, Inc., 688 F.3d 928, 931 (8th Cir. 2012) (quoting Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999)); see also Rynasko v. N.Y. Univ., 63 F.4th 186, 191 n.4 (2d Cir. 2023) (considering an executive order from a state website).

Mungai also did not plausibly allege that the University was deliberately indifferent to the alleged acts of racial hostility. The amended complaint lacks sufficient facts about the content of the reports made prior to the filing of the lawsuit and the University's response. Without enough facts to plausibly establish the University acted with deliberate indifference, Mungai's Title VI claim fails. See Davis, 526 U.S. at 649 (stating that a court can decide as a matter of law on a motion to dismiss whether a school's response was "not 'clearly unreasonable'").

### B. Dismiss with Prejudice

We typically review the decision to dismiss with prejudice, as opposed to granting leave to amend the complaint, for an abuse of discretion. Mitchell v. Kirchmeier, 28 F.4th 888, 903 (8th Cir. 2022). However, if the plaintiff has submitted proposed amendments, and the district court denies the motion to amend based on futility, then "we review the underlying legal conclusions *de novo*." Walker v. Barrett, 650 F.3d 1198, 1210 (8th Cir. 2011) (quoting Zutz v. Nelson, 601 F.3d 842, 850 (8th Cir. 2010)).

Mungai asserts that the pleading deficiencies for his Title VI, MHRA, Fourteenth Amendment, and § 1983 claims could be remedied by further amendments. We address each claim in turn.

### 1. Title VI

To determine whether Mungai cured the pleading deficiencies of his Title VI claim, we examined the last-filed proposed amended complaint ("Proposed Fourth Amended Complaint"), which included amendments from his previous proposed amended complaints. Regarding the failure to report to an appropriate person, after the applicable allegations that he reported something to staff, Mungai added the phrase "and (Ann, Paul, or Katie)." Similarly, with the one incident he initially alleged he reported something to the SCRC, Mungai added the phrase "and (Ann, Paul, or Katie)." The Proposed Fourth Amended Complaint alleges that Ann is an

"Equal Opportunity Associate / Deputy Title IX Coordinator," Paul is an "Ombudsperson with the Student Conflict Resolution Center," and Katie is an "Associate Director in the Office for Community Standards."

Two of the named individuals lack authority to take corrective action. As previously explained, the SCRC is not an office of notice and has no authority to take corrective action, and Paul worked at the SCRC. The amendments do not allege that the Office for Community Standards is an office of notice or that Katie, an employee in that office, had authority to take corrective action. Mungai's reports to Paul and Katie fail to qualify as notice to an appropriate person.

Finally, the reports to Ann are described in the EO Letter. Mungai filed these reports after he commenced the lawsuit and after he graduated. The reports to Ann do not allege actual knowledge by the University prior to Mungai's commencement of this lawsuit.

The proposed amendments also fail to cure other deficiencies in his claim. It is still unknown when he made other reports and the content of those reports. The proposed amendments do not adequately plead facts establishing that the University's response was clearly unreasonable. Due to the numerous pleading deficiencies in the proposed amendments, the district court did not err in dismissing with prejudice the Title VI claim.

### 2. *Minnesota Human Rights Act*

The Eleventh Amendment to the United States Constitution prohibits federal court jurisdiction over state law claims against states or state officials unless the state has consented to suit. Cooper v. St. Cloud State Univ., 226 F.3d 964, 968 (8th Cir. 2000). As an instrumentality of the state, the University receives Eleventh Amendment protections. Id. Minnesota has not waived its Eleventh Amendment immunity to MHRA claims in federal court. Id. at 969. The district court did not err in dismissing the MHRA claims with prejudice.

### 3. *Fourteenth Amendment*

A plaintiff may not bring a claim directly under the Fourteenth Amendment. Wax'n Works v. City of St. Paul, 213 F.3d 1016, 1019 (8th Cir. 2000). A claim involving the violation of the Fourteenth Amendment is construed as a claim under § 1983. Id. The district court did not err in dismissing with prejudice Mungai's direct claim of a violation of the Fourteenth Amendment.

### 4. *Section 1983*

To plausibly allege a claim under § 1983, a "person" must have deprived the plaintiff of their Constitutional rights. A State is not a "person" under § 1983. Treleven v. Univ. of Minn., 73 F.3d 816, 818 (8th Cir. 1996) (quoting Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)). As an instrumentality of the State, the University is not subject to liability under § 1983. Id. at 819. The district court did not err in dismissing with prejudice Mungai's § 1983 claim.

## III.  CONCLUSION

The judgment of the district court is affirmed.

_____

-9-