# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-1338

_____

Michael Stenger; Tim Dempsey; Mike Little; Kevin Moore; Matt Wellen; Mike Canepari; Daryl Roth; Tim Bray; Lee Walker; Nate Wood; Mitch Dale; Kerry Kozma; Matt Butcher; Fredy Valenzuela; Jerry Creahan; John Long; Ralph Bowen; Lou Aemisegger; Terry Clinton; Richard Kurtz; Douglas Meyer; Jesse Berry; Joe Todd; Mike Ellender; Mike Vaccara; Steve Renner; Kevin Flora; Scott Klinkardt; Rick Howard; Miker Havener; Steve Coleman; Tom Kelly; Arbi Ghookasian; Mike Cornehlson; Marty Cornehlson; Gerald Reckelhoff; Jeff Baum; Tom Ward; Joseph Bevenue; Jay Statler; Brad Troutman; Zachary Pilgrim; Joe Becker; Richard Meyerpeter; Eric Rackovan; Tyler Correll; Charles Hintze; Tom Busick; Michael Strovinsky; William Brown; Dave Foster; Edward Stangel; Corey Fritz; Brian Bowers; Richard Allen; Zejko Vokomanovic; Branko Vokomanovic; Joseph Krack; Lowell Wisdom; James Paxton; Albert Loughary; Mike Dowthit; Pat Seymour; Jason Kawalic; Travis Coaley; Michael Huntsman; Corey Flood; Dan Rasch; Joseph Obenhaus; Stephen Kozenczak; Andrew Eorawski; Narvala Fritsche; Anthony Digmetano; Mike Miller; Dave Kucera; John Osbourne; Mark Mabra; Steve Chausse; Joe Meyer; John Ohlendorf; Richard Brackett; Kevin Graham; Eric Dressler; Jeff Hever; Dave Harrison; Fred Werner; George Richardson; Tim Fletcher; Tim Hayes; Fred Widel; Dan Rekosh; Kevin Meyers; Rich Stone; Kyle Roques; Chris Lombardo; Tim Strube; Ryan Lang; Elmir Sobo; Tim Kolb; Robert Langrehr; Steven Voigt; Matt Fisher; John Molitor; Kevin Jones; Shelly Boatman; Noah Rupp; Bobby Mueller; Harold Parks; Ron Barrios; Eric Miller; David Spruiel; William Reissing; Glenn Bowman; Rick Satterfield; Kyle Pinkard; Matt Easter; Ron Weakly; Charle Kohn; James Ehlers; Wally Peters; Mike Presley; Rich Goddard; Dennis Singleton; Gregory Linear; Sean Stancliff; Matt Kelly

*Plaintiffs - Appellants*

v.

Bi-State Development Agency of Missouri/Illinois Metropolitan District, doing business as Metro

*Defendant - Appellee*

Amalgamated Transit Union, Division 788

*Intervenor Defendant - Appellee*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: September 23, 2015
Filed: December 15, 2015
_____

Before WOLLMAN, COLLOTON, and KELLY, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Appellants are a group of 1A MAT mechanics (the Mechanics), members of the Amalgamated Transit Union, Local 788 (the Union), and employees of Bi-State Development Agency of Missouri/Illinois Metropolitan District (Metro). The Mechanics filed a declaratory judgment action, seeking a declaration under section 13(c) of the Urban Mass Transportation Act of 1964 (UMTA) that Metro must establish a framework through which they could form a bargaining unit separate from the Union. The Union intervened and moved to dismiss for failure to state a claim on which relief could be granted.[1] The district court[2] granted the Union's motion,

_____

[1]Metro has not taken a position on the Union's motion to dismiss. It maintains that this action is ultimately a dispute between the Mechanics and the Union. See J.A. 19 ("[A]t its core, Plaintiffs' dispute focuses on the relationship between

holding that section 13(c) does not provide a federal private cause of action. We affirm.

## I. Background

Congress passed the UMTA in 1964 to help state and local governments improve their cities' mass transit systems. To accomplish this goal, the UMTA created a federal grant system that provided funds with which state and local governments could purchase failing privately owned mass transit companies. Recognizing that the transit employees' transition from private employment to public employment could negatively affect their collective-bargaining rights, Congress included section 13(c), which requires, as a condition precedent to receiving federal funds, that the Secretary of Labor certify that transit employees' rights are protected by "fair and equitable" arrangements between employers and unions. 49 U.S.C. § 5333(b)(1) (2012). Those arrangements must ensure, *inter alia*, "the preservation of rights, privileges, and benefits . . . under existing collective bargaining agreements" and "the continuation of collective bargaining rights." Id. § 5333(b)(2)(A)-(B). Once the Secretary certifies that the arrangements comply with section 13(c), they are made part of the grant contract between the recipient and the Department of Transportation, and the Department of Transportation releases the funds to the recipient.

Metro receives federal funds under the UMTA. It is an interstate compact that was created by Illinois and Missouri in 1949, formed to provide a unified mass transit system in the bi-state St. Louis area. 45 Ill. Comp. Stat. 100/1 (2015); Mo. Rev.

Plaintiffs and the Union and whether Plaintiffs are properly included and represented in the historical bargaining unit.").

[2]The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri.

Stat. § 70.370 (2015).[3] It is an agency that functions like a municipality, encompassing territory in both Illinois and Missouri. It owns and operates the city's light rail and bus services, the St. Louis Downtown Airport, and certain other services provided by the city, such as the tram that lifts visitors to the top of the Gateway Arch.

As a longtime recipient of federal funds, Metro has been a party to several section 13(c) arrangements that the Secretary of Labor has certified and incorporated into Metro's grant contracts with the Department of Transportation. In the past, Metro has negotiated with the Union and has entered into several collective-bargaining agreements that have named the Union as the exclusive bargaining representative of Metro's employees. The Union represents most of Metro's non-supervisory employees, including the Mechanics, bus drivers, light rail operators, maintenance employees, sewer workers, and others.

In October 2013, the Mechanics submitted a petition to Metro's governing body, the Board of Commissioners (Board), that was signed by 178 of Metro's 272 1A MAT mechanics. Speaking through the petition, the Mechanics requested that the Board "adopt a framework by which they could exercise the same collective bargaining rights as other private and public sector employees in the states of Missouri and Illinois," in sum, a request that Metro create a procedure through which the Mechanics could form a separate bargaining unit. Such a separate bargaining unit was necessary, the Mechanics said, because they had no "frequency of interchange with other bargaining unit employees," because they had "separate and distinct managerial control over employees and daily operations," and because they had minimal integration with other employees in their bargaining unit.

---

[3]Congress approved the compact's formation two years later. Joint Resolutions of the United States Congress of August 31, 1950, Pub. L. No. 81-743, 64 Stat. 568.

The Board took no action on the petition, whereupon the Mechanics brought this suit, in which they claimed that because Metro is an interstate compact, neither Illinois nor Missouri labor laws apply to its employees. Further, they alleged that because Metro is a political subdivision of Illinois and Missouri, it is exempt from federal labor regulations under the National Labor Relations Act (NLRA). 29 U.S.C. § 152(2) (2012). Thus, declaratory relief was necessary in the absence of state or federal law that would provide a procedure for the creation of the separate bargaining unit needed to allow them to exercise their collective bargaining rights. As recounted above, the district court granted the Union's motion to dismiss, concluding that in Jackson Transit Authority v. Local Division 1285, Amalgamated Transit Union, AFL-CIO-CLC, 457 U.S. 15, 29 (1982), the Supreme Court held that section 13(c) does not provide a federal private cause of action. On appeal, the Mechanics argue that Jackson Transit Authority is distinguishable because it did not address the unique legal status of an interstate compact.

## II. Discussion

"'Whether a complaint states a cause of action is a question of law,' and our 'review on appeal [is] *de novo*.'" Zayed v. Associated Bank, N.A., 779 F.3d 727, 732 (8th Cir. 2015) (quoting Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 936 (8th Cir. 2012)).

Congressional intent is the touchstone when determining whether a federal statute creates a federal private cause of action. See Alexander v. Sandoval, 532 U.S. 275, 286-287 (2001) ("The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy."). In Jackson Transit Authority, 457 U.S. at 23-28, the Court determined that Congress did not intend to provide a federal forum for disputes between unions and transit authorities, but rather intended that such disputes be settled by state courts applying state law, id. at 27-28 ("Section 13(c) would not

-5-

supersede state law, it would leave intact the exclusion of local government employers from the National Labor Relations Act, and state courts would retain jurisdiction to determine the application of state policy to local government transit labor relations."). Further, the Court determined that, rather than creating a federal private cause of action, "Congress intended that § 13(c) would be an important tool to protect the collective-bargaining rights of transit workers, by ensuring that state law preserved their rights before federal aid could be used to convert private companies into public entities." Id.; see also Burke v. Utah Transit Auth., 462 F.3d 1253, 1258 (10th Cir. 2006) (holding that section 13(c) does not create a federal private cause of action). Accordingly, any framework through which the Mechanics might reorganize as a separate bargaining unit must derive, if anywhere, from "state law applied in state courts." See Jackson Transit Auth., 457 U.S. at 29.

The Mechanics argue that Jackson Transit Authority did not address what Congress intended would occur if there were no state labor law to apply. The Court did, however, say that section 13(c) would not create, for example, a right to strike where no such right existed under state law. Id. at 26 (referring to statements from Senator Morse that "it would be for the State court to decide whether [the employees] had" the right to strike where no specific state laws forbade it (alteration in original) (quoting 109 Cong. Rec. 5674 (1963))). We read this as expressing the Court's view that Congress did not intend that federal law would fill gaps left by an absence of state law.

Moreover, the language and structure of section 13(c) do not suggest that Congress intended to create a federal private cause of action. Congressional intent to create a federal private cause of action is manifested by the inclusion of "'rights-creating' language"—language that focuses on the individuals the statute is meant to protect, rather than those the statute seeks to regulate. See Alexander, 532 U.S. at 288 (quoting Cannon v. Univ. of Chicago, 441 U.S. 677, 690 n.13 (1979)). The structure of a statute indicates congressional intent to create a federal private cause

of action when the statute focuses on individual, rather than aggregate effects. See Gonzaga Univ. v. Doe, 536 U.S. 273, 288 (2002). Section 13(c) contains no rights-creating language. It provides, "As a condition of financial assistance . . . , the interests of employees affected by the assistance shall be protected under arrangements the Secretary of Labor concludes are fair and equitable." 49 U.S.C. § 5333(b)(1). The statutory language thus focuses on steps the Secretary of Labor must take to ensure that employee protections are in place, but does not create any specific rights itself. See Alexander, 532 U.S. at 289. The structure of section 13(c) also indicates that Congress did not intend to create a federal private cause of action, because it protects only the rights of employees generally, not "the needs of any particular person." Gonzaga Univ., 536 U.S. at 288 (quoting Blessing v. Freestone, 520 U.S. 329, 343 (1997)). The federal grant program established by the UMTA helps state and local governments improve their mass transit systems. Section 13(c) functions only to ensure that minimum employee protections are in place before the Department of Transportation disburses the funds. The absence of any focus on individual employees' rights indicates the lack of any congressional intent to create a federal private cause of action.

Although the issue raised by the Mechanics' claim—whether section 13(c) provides a federal private cause of action—differs from the issue raised in Jackson Transit Authority—whether section 13(c) arrangements constitute federally enforceable contracts—this difference is not material, because "the critical factor" in both questions "is the congressional intent behind the particular provision at issue." Jackson Transit Auth., 457 U.S. at 22. Because, as the Court made clear, the "consistent theme" in Section 13(c)'s legislative history was that "Congress intended that labor relations between transit workers and local governments would be controlled by state law," id. at 24, the district court correctly concluded that section 13(c) does not entitle the Mechanics to the relief they seek.

## III. Conclusion

The judgment is affirmed.

_____