# United States Court of Appeals

### For the Eighth Circuit

_____

No. 15-1580

_____

Sheldon Peters Wolfchild; Ernie Peters Longwalker; Scott Adolphson; Morris Pendleton; Barbara Buttes; Thomas Smith, on behalf of themselves and all others similarly situated

*Plaintiffs - Appellants*

v.

Redwood County; Paxton Township; Sherman Township; Honner Township; Renville County; Birch Cooley Township; Sibley County; Moltke Township; John Goelz, III; Gerald H. Hosek; Allen J. Kokesch; Jacalyn S. Kokesch; Paul W. Schroeder; Karen J. Schroeder; Chad M. Lund; Amy M. Lund; Rockford L. Crooks; Janie K. Crooks; UT School District; Episcopal Diocese of Minnesota; Michael R. Rasmussen; Lee H. Guggisberg Trust UWT; Patrick T. Hansen; Nancy S. Hansen; Kelly M. Lipinski; Cynthia Johnson; Mitchell H. Unruh; William Schmidt; Norma Schmidt; Prouty Properties LLC; Robert D. Rebstock; Lori A. Rebstock; Allan D. Eller; Elmer C. Dahms; Barbara L. Dahms; Marlene A. Platt, RT; Eugene A. Engstrom; Enid Guggisberg; Melvin W. Maddock; Kerry D. Maddock; Thomas J. Heiling; Keefe Family Farm LLC; Larry Lussenhop; Jon Lussenhop; TJ & CC Properties LLC; Dennis A. Auslam; Michelle D. Auslam; Dale R. Hanna; Nancy Hanna; Harold Guggisberg; Sandra Clarken; Julie Anna Guggisberg; Steven R. Helmer; Dawn R. Helmer; George F. Schottenbauer; John Goeltz; Alice Goeltz; Francis Goeltz; Edward J. Gaasch; Simmons Valley Trust; John C. Simmons; Mary J. Simmons; John (L.) Hogan; Timothy H. Kerkhoff; Theresa J. Kerkhoff; Sherman Acres LLC; Kenneth Larsen; Henry G. O'Neil; Judith A. O'Neil; Charles D. Neitzel; Scott A. Olafson; Kimberly A. Olafson; Kim M. Cunningham; John H. Reynolds; Jeanne A. Reynolds; Douglas Scherer; Brenda Scherer; Willard Scherer; Eugenie Scherer; Bruce Robert Black; Lila L. Black; Neil and Donna Berger Family; Charles Case; Lyle Black Living Trust; Lower Sioux Indian Community; Doe Nos. 1-500

*Defendants - Appellees*

------------------------------

James J Ashe

*Amicus Curiae*

_____

No. 15-2375

_____

Sheldon Peters Wolfchild; Ernie Peters Longwalker; Scott Adolphson; Morris Pendleton; Barbara Buttes; Thomas Smith, on behalf of themselves and all others similarly situated

*Plaintiffs - Appellants*

v.

Redwood County; Paxton Township; Sherman Township; Honner Township; Renville County; Birch Cooley Township; Sibley County; Moltke Township; John Goelz, III; Gerald H. Hosek; Allen J. Kokesch; Jacalyn S. Kokesch; Paul W. Schroeder; Karen J. Schroeder; Chad M. Lund; Amy M. Lund; Rockford L. Crooks; Janie K. Crooks; UT School District; Episcopal Diocese of Minnesota; Michael R. Rasmussen; Lee H. Guggisberg Trust UWT; Patrick T. Hansen; Nancy S. Hansen; Kelly M. Lipinski; Cynthia Johnson; Mitchell H. Unruh; William Schmidt; Norma Schmidt; Prouty Properties LLC; Robert D. Rebstock; Lori A. Rebstock; Allan D. Eller; Elmer C. Dahms; Barbara L. Dahms; Marlene A. Platt, RT; Eugene A. Engstrom; Enid Guggisberg; Melvin W. Maddock; Kerry D. Maddock; Thomas J. Heiling; Keefe Family Farm LLC; Larry Lussenhop; Jon Lussenhop; TJ & CC Properties LLC; Dennis A. Auslam; Michelle D. Auslam; Dale R. Hanna; Nancy Hanna; Harold Guggisberg; Sandra Clarken; Julie Anna Guggisberg; Steven R. Helmer; Dawn R. Helmer; George F. Schottenbauer; John Goeltz; Alice Goeltz; Francis Goeltz; Edward J. Gaasch; Simmons Valley Trust; John C. Simmons; Mary J. Simmons; John (L.) Hogan; Timothy H. Kerkhoff; Theresa J. Kerkhoff; Sherman Acres LLC; Kenneth Larsen; Henry G. O'Neil;

Judith A. O'Neil; Charles D. Neitzel; Scott A. Olafson; Kimberly A. Olafson; Kim M. Cunningham; John H. Reynolds; Jeanne A. Reynolds; Douglas Scherer; Brenda Scherer; Willard Scherer; Eugenie Scherer; Bruce Robert Black; Lila L. Black; Neil and Donna Berger Family; Charles Case; Lyle Black Living Trust; Lower Sioux Indian Community; Doe Nos. 1-500

*Defendants - Appellees*

_____

No. 15-3225

_____

Sheldon Peters Wolfchild; Ernie Peters Longwalker; Scott Adolphson; Morris Pendleton; Barbara Buttes; Thomas Smith, on behalf of themselves and all others similarly situated

*Plaintiffs - Appellants*

Erick G. Kaardal, *Plaintiff*s' attorney; Mohrman, Kaardal & Erickson, P.A., *Plaintiff*s' law firm

*Appellants*

v.

Redwood County; Paxton Township; Sherman Township; Honner Township; Renville County; Birch Cooley Township; Sibley County; Moltke Township; John Goelz, III; Gerald H. Hosek; Allen J. Kokesch; Jacalyn S. Kokesch; Paul W. Schroeder; Karen J. Schroeder; Chad M. Lund; Amy M. Lund; Rockford L. Crooks; Janie K. Crooks; UT School District; Episcopal Diocese of Minnesota; Michael R. Rasmussen; Lee H. Guggisberg Trust UWT; Patrick T. Hansen; Nancy S. Hansen; Kelly M. Lipinski; Cynthia Johnson; Mitchell H. Unruh; William Schmidt; Norma Schmidt; Prouty Properties LLC; Robert D. Rebstock; Lori A. Rebstock; Allan D. Eller; Elmer C. Dahms; Barbara L. Dahms; Marlene A. Platt, RT; Eugene A. Engstrom; Enid Guggisberg; Melvin W. Maddock; Kerry D. Maddock; Thomas J. Heiling; Keefe Family Farm LLC; Larry Lussenhop; Jon Lussenhop; TJ & CC Properties LLC; Dennis A. Auslam; Michelle D. Auslam;

-3-

Dale R. Hanna; Nancy Hanna; Harold Guggisberg; Sandra Clarken; Julie Anna Guggisberg; Steven R. Helmer; Dawn R. Helmer; George F. Schottenbauer; John Goeltz; Alice Goeltz; Francis Goeltz; Edward J. Gaasch; Simmons Valley Trust; John C. Simmons; Mary J. Simmons; John (L.) Hogan; Timothy H. Kerkhoff; Theresa J. Kerkhoff; Sherman Acres LLC; Kenneth Larsen; Henry G. O'Neil; Judith A. O'Neil; Charles D. Neitzel; Scott A. Olafson; Kimberly A. Olafson; Kim M. Cunningham; John H. Reynolds; Jeanne A. Reynolds; Douglas Scherer; Brenda Scherer; Willard Scherer; Eugenie Scherer; Bruce Robert Black; Lila L. Black; Neil and Donna Berger Family; Charles Case; Lyle Black Living Trust; Lower Sioux Indian Community; Doe Nos. 1-500

*Defendants - Appellees*

_____

No. 15-3277

_____

Sheldon Peters Wolfchild; Ernie Peters Longwalker; Scott Adolphson; Morris Pendleton; Barbara Buttes; Thomas Smith, on behalf of themselves and all others similarly situated

*Plaintiffs - Appellees*

Erick G. Kaardal, *Plaintiff*s' attorney; Mohrman, Kaardal & Erickson, P.A., *Plaintiff*s' law firm

*Appellees*

v.

Redwood County; Paxton Township; Sherman Township; Honner Township; Renville County; Birch Cooley Township; Sibley County; Moltke Township

*Defendants - Appellants*

John Goelz, III; Gerald H. Hosek; Allen J. Kokesch; Jacalyn S. Kokesch; Paul W. Schroeder; Karen J. Schroeder; Chad M. Lund; Amy M. Lund; Rockford L.

-4-

Crooks; Janie K. Crooks; UT School District; Episcopal Diocese of Minnesota; Michael R. Rasmussen; Lee H. Guggisberg Trust UWT; Patrick T. Hansen; Nancy S. Hansen; Kelly M. Lipinski; Cynthia Johnson; Mitchell H. Unruh; William Schmidt; Norma Schmidt; Prouty Properties LLC; Robert D. Rebstock; Lori A. Rebstock; Allan D. Eller; Elmer C. Dahms; Barbara L. Dahms; Marlene A. Platt, RT; Eugene A. Engstrom; Enid Guggisberg; Melvin W. Maddock; Kerry D. Maddock; Thomas J. Heiling; Keefe Family Farm LLC; Larry Lussenhop; Jon Lussenhop; TJ & CC Properties LLC; Dennis A. Auslam; Michelle D. Auslam; Dale R. Hanna; Nancy Hanna; Harold Guggisberg; Sandra Clarken; Julie Anna Guggisberg; Steven R. Helmer; Dawn R. Helmer; George F. Schottenbauer; John Goeltz; Alice Goeltz; Francis Goeltz; Edward J. Gaasch; Simmons Valley Trust; John C. Simmons; Mary J. Simmons; John (L.) Hogan; Timothy H. Kerkhoff; Theresa J. Kerkhoff; Sherman Acres LLC; Kenneth Larsen; Henry G. O'Neil; Judith A. O'Neil; Charles D. Neitzel; Scott A. Olafson; Kimberly A. Olafson; Kim M. Cunningham; John H. Reynolds; Jeanne A. Reynolds; Douglas Scherer; Brenda Scherer; Willard Scherer; Eugenie Scherer; Bruce Robert Black; Lila L. Black; Neil and Donna Berger Family; Charles Case; Lyle Black Living Trust; Lower Sioux Indian Community; Doe Nos. 1-500

*Defendants*

————————

Appeals from United States District Court
for the District of Minnesota - Minneapolis

————————

Submitted: December 17, 2015
Filed: June 1, 2016

————————

Before WOLLMAN, BRIGHT, and LOKEN, Circuit Judges.

————————

BRIGHT, Circuit Judge.

Appellants-plaintiffs filed this purported class action claiming the right to title and possession of twelve square miles of land in southern Minnesota ("twelve square miles"). Specifically, Appellants allege they are lineal descendants of the Mdewakanton band of the Sioux tribe who were loyal to the United States during the 1862 uprising ("loyal Mdewakanton"). Appellants claim the Secretary of the Interior set apart the twelve square miles for the loyal Mdewakanton and their descendants and, thereby, the loyal Mdewakanton have the exclusive right to title, use, and possession of the twelve square miles. Appellees physically possess or claim a property interest in the twelve square miles. The issues underlying this case are complex, requiring interpretation of over 150-year-old statutes, regulations, and legislative history, understanding of past mistreatment of Indian tribes by the United States, and a complicated area of the law. For the reasons set forth below, we affirm the district court's grant of Appellees' motions to dismiss. But we conclude the district court abused its discretion when imposing sanctions and vacate the district court's sanctions order. We, further, hold issues relating to the appellate-cost bond are moot. But we remand to the district court for the limited purpose of assessing whether the municipal government Appellees ("Municipal Appellees") are entitled to costs pursuant to Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920.

## I. BACKGROUND

The long, complicated history underlying this case is set forth in Wolfchild v. United States, 731 F.3d 1280 (Fed. Cir. 2013), cert. denied, 134 S. Ct. 1516 (2014). Thus, we repeat only those historical facts necessary for discussion of the issues before this Court.

In the mid-1800s, the Sioux residing in present-day Minnesota (the "Sioux")[1] consisted of four bands, including the Mdewakanton. In a series of treaties, the Sioux ceded their aboriginal land to the United States. The treaties provided for certain benefits to the Sioux and, ultimately, created a reservation bordering the Minnesota River in Southern Minnesota.

In 1862, fueled in part by broken treaty promises and other mistreatment, the Sioux engaged in an uprising during which a large number of white settlers were killed and a significant amount of property destroyed. In response, the United States annulled all treaties between the United States and the Sioux, eliminated the reservation, convicted and executed Sioux who allegedly engaged in the uprising, and removed many Sioux from the area.

During the uprising, however, some Sioux remained loyal to the United States, many affirmatively acting to save white settlers. Thus, notwithstanding the broad termination of the Sioux treaties, Section 9 of the Act of February 16, 1863 (the "1863 Act") permitted the Secretary of the Interior to "set apart . . . eighty acres in severalty to each individual [Sioux] . . . who exerted himself in rescuing the whites" and provided that any "land so set apart . . . shall be an inheritance to said Indians and their heirs forever." Act of Feb. 16, 1863, ch. 37, § 9, 12 Stat. 652, 654. A number of documents indicate the Secretary of the Interior, at a minimum, attempted to use

---

[1]Traditionally, the term "Sioux" collectively describes the Minnesota bands discussed in this opinion. Michael Johnson, Tribes of the Sioux Nation 4 (2000). We recognize the complicated history behind the name "Sioux." Id. (noting the name "Sioux" is derived from a French corruption of an Ojibwa word meaning " 'small adder' or 'enemy' "). We also note the name "Dakota" may more appropriately describe the collective bands. See id. But in light of the extensive litigation underlying this case, and the consistent use of the term "Sioux" in the treaties and statutes underlying this action, this opinion refers to the combination of Minnesota bands as the "Sioux."

his authority under the 1863 Act to set apart the twelve square miles for the loyal Mdewakanton in 1865.

Beginning in 2003, the United States Court of Federal Claims handled a significant litigation over whether the loyal Mdewakanton were entitled to certain lands and appropriations from the United States government. The loyal Mdewakanton had some success, but the Federal Circuit ultimately concluded governing law did not support a claim for relief against the United States. Wolfchild, 731 F.3d at 1288, 1303. As relevant to this case, the loyal Mdewakanton argued—pursuant to the 1863 Act—that the Secretary of the Interior set apart the twelve square miles for the benefit of the loyal Mdewakanton and their descendants in 1865. Id. at 1292. The Federal Circuit concluded the actions of the Secretary of the Interior in 1865 did not "support a timely claim for relief, regardless of whether [the actions] could qualify as having 'set apart' the land under the [1863] Act." Id. The Federal Circuit noted the United States sold the twelve square miles "no later than 1895" and, therefore, the six-year statute of limitations had "long since run." Id. at 1293. Thus, the Federal Circuit held the loyal Mdewakanton failed to state a claim against the United States grounded in the 1863 Act. Id.

Following the dismissal of the claims against the United States, Appellants filed this action. As in the United States Court of Federal Claims, Appellants argued the Secretary of the Interior set apart the twelve square miles in 1865 for the benefit of the loyal Mdewakanton. As relief, Appellants sought declaratory judgment that the loyal Mdewakanton own exclusive title to the twelve square miles, and brought ejectment and trespass claims against Appellees under federal common law. Appellees filed motions to dismiss, which were granted. Appellants appealed.

While the appeal on the merits was pending, certain Appellees moved the district court for sanctions against Appellants and their counsel, and, in addition, the imposition of an appellate-cost bond. Municipal Appellees also moved the district

court for costs pursuant to Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920. The district court granted the motion for sanctions, awarding attorneys' fees totaling $281,906.34. The district court further required Appellants to post a $200,000.00 appellate-cost bond. But the district court denied, without prejudice, Municipal Appellees' motion for costs, finding the matter was moot in light of the imposed sanctions. Appellants and their counsel appealed the order imposing sanctions and the appellate-cost bond. Municipal Appellees filed a cross appeal of the district court's order denying costs. We consolidated all of the cases for this appeal.

## II. ANALYSIS

### A. Motion to Dismiss

We first address the district court's grant of Appellees' motions to dismiss. We review de novo the grant of a Fed. R. Civ. P. 12 motion to dismiss. Greenman v. Jessen, 787 F.3d 882, 887 (8th Cir. 2015). "[W]e assume all factual allegations in the pleadings are true and interpret them 'in the light most favorable to the nonmoving party.'" Murphy v. Aurora Loan Servs., LLC, 699 F.3d 1027, 1033 (8th Cir. 2012) (quoting Cmty. Fin. Grp., Inc. v. Republic of Kenya, 663 F.3d 977, 980 (8th Cir. 2011)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Dismissal "is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law." Greenman, 787 F.3d at 887 (quoting Ashley Cty., Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009)).

Among numerous arguments, Appellants assert the district court erred in concluding the 1863 Act does not provide a private remedy. Primarily, Appellants

argue the district court erred when it found the Appellants' claims "flow from the 1863 Act," not the federal common law. Specifically, Appellants aver the Amended Complaint set forth claims pursuant to the federal common law, as described in Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 94 S. Ct. 772, 39 L. Ed. 2d 73 (1974) [hereinafter Oneida I] and County of Oneida v. Oneida Indian Nation, 470 U.S. 226, 105 S. Ct. 1245, 84 L. Ed. 2d 169 (1985) [hereinafter Oneida II].

In the Oneida litigation, the Supreme Court addressed the question of whether "an Indian tribe may have a live cause of action for a violation of its possessory rights" to aboriginal land that occurred 175 years earlier. Oneida II, 470 U.S. at 229-30, 105 S. Ct. 1245, 84 L. Ed. 2d 169. The Supreme Court concluded a tribe "could bring a common-law action to vindicate their aboriginal rights."[2] Id. at 236 (emphasis added). In so holding, the Supreme Court directly distinguished cases regarding "lands allocated to individual Indians," concluding allegations of possession or ownership under a United States patent are "normally insufficient" for federal jurisdiction. Oneida I, 414 U.S. at 676-77, 94 S. Ct. 772, 39 L. Ed. 2d 73 (emphasis added). Thus, federal common law claims arise when a tribe "assert[s] a present right to possession based . . . on their aboriginal right of occupancy which was not terminable except by act of the United States." Id. at 677 (emphasis added).

The district court correctly held Appellants failed to state a claim under the federal common law as set forth in the Oneida progeny. The Amended Complaint

---

[2]"Aboriginal rights" or "aboriginal title" relate to the "very early . . . accepted doctrine" that "fee title to the lands occupied by the Indians when the colonists arrived became vested in the sovereign . . . [but] a right of occupancy in the Indian tribes was . . . recognized. That right, sometimes called Indian title and good against all but the sovereign, could be terminated only by sovereign act." Oneida I, 414 U.S. at 667, 94 S. Ct. 772, 39 L. Ed. 2d 73. Thus, at the time the United States adopted the Constitution, "tribal rights to Indian lands became the exclusive province of the federal law." Id. (emphasis added).

states: "[The loyal Mdewakanton] seek possession of [their] 12 square mile reservation . . . set apart and conveyed by the Secretary of Interior . . . on March 17, 1865 under authority given the Secretary of Interior under the Act of February 16, 1863." Thus, in contrast to a claim of <u>aboriginal</u> title, Appellants directly asserted the twelve square miles vested in the loyal Mdewakanton pursuant to the 1863 Act.

Further, the language of the 1863 Act directly contradicts any claim that the loyal Mdewakanton had aboriginal title to the twelve square miles. The 1863 Act authorized the Secretary of the Interior "to set apart public lands . . . <u>to each</u> <u>*individual* of the before-named bands</u> who exerted himself in rescuing the whites" from the uprising. § 9, 12 Stat. at 654 (emphasis added). Thus, assuming the twelve square miles were set apart for the loyal Mdewakanton, the land was for the benefit of "each <u>individual</u>"—not a tribe. <u>Id.</u> (emphasis added). This lawsuit, therefore, concerns "lands allocated to individual Indians, not tribal rights to lands," <u>Oneida I</u>, 414 U.S. at 676, 94 S. Ct. 772, 39 L. Ed. 2d 73, and does not fall into the federal common law articulated in the <u>Oneida</u> progeny.

Because Appellants failed to state a claim under the federal common law, Appellants' claims only survive to the extent the 1863 Act provides a private remedy. Whether the loyal Mdewakanton have a private remedy under the 1863 Act is a question of statutory construction. <u>Touche Ross & Co. v. Redington</u>, 442 U.S. 560, 568, 99 S. Ct. 2479, 61 L. Ed. 2d 82 (1979). The mere " 'fact that a federal statute has been violated and some person harmed does not automatically give rise to a private [remedy] in favor of that person.' " <u>MM&S Fin., Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.</u>, 364 F.3d 908, 910 (8th Cir. 2004) (quoting <u>Redington</u>, 442 U.S. at 568, 99 S. Ct. 2479, 61 L. Ed. 2d 82).

-11-

Section 9 of the 1863 Act provides:

[T]he Secretary of the Interior is hereby authorized to set apart of the public lands, not otherwise appropriated, eighty acres in severalty to each individual of the before-named bands who exerted himself in rescuing the whites from the late massacre of said Indians. The land so set apart shall not be subject to any tax, forfeiture, or sale, by process of law, and shall not be aliened or devised, except by the consent of the President of the United States, but shall be an inheritance to said Indians and their heirs forever.

The provision plainly does not provide an express private remedy for the loyal Mdewakanton. Thus, to determine whether an implied private remedy exists, we "interpret the statute Congress . . . passed to determine whether it displays an intent to create . . . a private remedy." Alexander v. Sandoval, 532 U.S. 275, 286, 121 S. Ct. 1511, 149 L. Ed. 2d 517 (2001). Statutory intent to create a private remedy "is determinative." Id. Without an intent to create a private remedy, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." Id. at 286-87.

"Congressional intent to create a federal private [remedy] is manifested by the inclusion of ' "rights creating" language'—language that focuses on the individuals the statute is meant to protect, rather than those the statute seeks to regulate." Stenger v. Bi-State Dev. Agency, 808 F.3d 734, 738 (8th Cir. 2015) (quoting Alexander, 532 U.S. at 288, 121 S. Ct. 5511, 149 L. Ed. 2d 517). Here, while Congress intended to benefit the loyal Mdewakanton when it passed Section 9 of the 1863 Act, the statute does not contain "rights-creating language." Section 9 provides that the Secretary of the Interior is "authorized to set apart . . . public lands." The statutory language focuses on steps the Secretary of the Interior could take to provide land to the loyal Mdewakanton, but does not create any specific rights for the loyal Mdewakanton. See § 9, 12 Stat. at 654.

-12-

Further, the Supreme Court held that statutory provisions phrased as "general . . . command[s] to a federal agency" are unlikely to give rise to a private remedy. Univs. Research Ass'n, Inc. v. Coutu, 450 U.S. 754, 772, 101 S. Ct. 1451, 67 L. Ed. 2d 662 (1981). If a general command is unlikely to give rise to a private remedy, it is even more unlikely that discretionary language ("authorized to set apart") could support finding a private remedy by implication. See Thye v. United States, 109 F.3d 127, 129 (2d Cir. 1997); see also Wolfchild, 731 F.3d at 1292 (holding the Secretary of the Interior's power under Section 9 of the 1863 Act is discretionary).

Finally, the basic structure of the 1863 Act also indicates Congress did not intend to create a private remedy for the loyal Mdewakanton. Congress enacted the majority of the 1863 Act to punish the Sioux for the 1862 uprising and to indemnify injured white settlers. Act of Feb. 16, 1863, ch. 37, Preamble, 12 Stat. 652, 652. And the legislative history emphasizes the strong opposition to providing any lands to the loyal Mdewakanton after the 1862 uprising. See, e.g., Cong. Globe, 37th Cong., 3d Sess. 515 (1863). In light of the structure of the 1863 Act and the legislative history, Congress did not intend to provide an implied private remedy for the loyal Mdewakanton within Section 9 of the 1863 Act.

Therefore, the 1863 Act does not provide a private remedy and the loyal Mdewakanton cannot rely on the 1863 Act to seek a declaration of possessory rights. See, e.g., Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671, 70 S. Ct. 876, 94 L. Ed. 1194 (1950) (noting the Declaratory Judgment Act is only procedural). Because the loyal Mdewakanton are not entitled to a declaration of the exclusive right and title of the twelve square miles under the 1863 Act, the loyal Mdewakanton have no property rights upon which to base federal common law claims for ejectment and trespass. See Oneida I, 414 U.S. at 676-77, 94 S. Ct. 772, 39 L. Ed. 2d 73 ("[T]he incidents of ownership are, for the most part, matters of local property law to be vindicated in local courts"); see also Taylor v. Anderson, 234 U.S. 74, 34 S. Ct. 724, 58 L. Ed. 1218 (1914) (denying a federal common law ejectment claim where

plaintiffs were individual Indians and the suit concerned lands allocated to individual Indians—not tribal rights to land).  For this reason, we affirm the district court's order and judgment granting Appellees' motions to dismiss.

In light of our conclusion that the district court properly granted Appellees' motions to dismiss on the ground that the 1863 Act does not provide a private remedy to the loyal Mdewakanton, we need not decide the numerous other bases for dismissal briefed by Appellees.[3]

## B.    Sanctions

We next address whether the district court erred when it imposed sanctions upon Appellants and their counsel and required an appellate-cost bond.  The district

---

[3]We recognize that, as a general rule, we decide issues of sovereign immunity before reaching the merits of the opinion.  See, e.g. Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A., 551 F.3d 812, 816 (8th Cir. 2009) (noting the general rule that "a court may not assume 'hypothetical jurisdiction' to decide 'contested questions of law when its jurisdiction is in doubt' " (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998))).  But, since we decide the loyal Mdewakanton failed to state a claim for relief, we do not reach the issue of whether Lower Sioux Indian Community is entitled to sovereign immunity.  See, e.g., Friends of Lake View Sch. Dist. Incorporation No. 25 v. Beebe, 578 F.3d 753, 763 n.14 (8th Cir. 2009) (concluding that because we affirmed the dismissal of the complaint we did not need to resolve the sovereign immunity question).

Because we do not decide whether the Lower Sioux Indian Community is entitled to sovereign immunity, we also do not reach the issue of whether the district court erred in denying Appellants' motion for judicial notice of the Lower Sioux Indian Community's corporate charter.  We further deny Appellants' motion for judicial notice of the Lower Sioux Indian Community's corporate charter before this Court as moot.

court imposed sanctions pursuant to Fed. R. Civ. P. 11(b)-(c),[4] its inherent authority,[5] and 28 U.S.C. § 1927.[6]  We review the imposition of sanctions for abuse of

---

[4]Rule 11(b)-(c) provides, in pertinent part:

[(b)] By presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law . . . .

[(c)] If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

[5]The district court possesses inherent powers " 'to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases.' " Chambers v. NASCO, Inc., 501 U.S. 32, 43-46, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) (quoting Link v. Wabash R.R. Co., 370 U.S. 626, 630-31, 82 S. Ct. 1386, 8 L. Ed. 2d 734 (1962)). The district court's "inherent powers include the ability to supervise and 'discipline attorneys who appear before it' and discretion 'to fashion an appropriate sanction for conduct which abuses the judicial process,' including assessing attorney fees or dismissing the case." Wescott Agri-Prods., Inc. v. Sterling State Bank, Inc., 682 F.3d 1091, 1095 (8th Cir. 2012) (quoting Chambers, 501 U.S. at 43-45, 111 S. Ct. 2123, 115 L. Ed. 2d 27).

[6]Section 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably

discretion.  <u>Dunbar v. Wells Fargo Bank, N.A.</u>, 709 F.3d 1254, 1258 (8th Cir. 2013) (Rule 11); <u>United States v. Gonzalez-Lopez</u>, 403 F.3d 558, 564 (8th Cir. 2005) (inherent authority); <u>Gundacker v. Unisys Corp.</u>, 151 F.3d 842, 849 (8th Cir. 1998) (section 1927).

Here, the district court imposed a particularly heavy assessment of sanctions totaling $281,906.34.  The district court sanctioned Appellants and their counsel because it found Appellants' claims meritless.  While we ultimately agree the district court correctly dismissed Appellants' Amended Complaint, we disagree that Appellants and their counsel failed to set forth colorable factual and legal arguments to support their claims.  <u>See</u> <u>E.E.O.C. v. Trans States Airlines, Inc.</u>, 462 F.3d 987, 996 (8th Cir. 2006) (noting that even when a claim is ultimately meritless, sanctions are not appropriate where the plaintiffs had colorable legal arguments to support their claims).

Federal Indian law is complex.  <u>See, e.g.</u>, <u>Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort</u>, 629 F.3d 1173, 1197 (10th Cir. 2010) (describing issues of tribal sovereign immunity as a "complicated Indian-law issue[]"); <u>Confederated Tribes of Colville Reservation v. United States</u>, 964 F.2d 1102, 1116 (Fed. Cir. 1992) (concluding summary judgment was inappropriate because the case " 'involve[d] complex issues of Indian land law' " coupled with " 'fact-intensive takings jurisprudence seeking just compensation' " (quoting <u>Confederated Tribes of Colville Reservation v. United States</u>, 20 Cl. Ct. 31, 38-39 n.14 (1990))).  The federal Indian law issues presented in this case, including interpretation of over 150-year-old statutes, regulations, and legislative history, imposition of equitable doctrines, federal jurisdiction over Indian communities, and the history between the United States and Indian tribes, are far from clear cut.  <u>See, e.g.</u>, <u>Burlington Res. Oil & Gas Co. v. Colo. Oil & Gas Conservation Comm'n Dept. of Nat. Res.</u>, 986 F. Supp. 1351, 1355-56 (D.

incurred because of such conduct.

-16-

Colo. 1997) (denying a motion for sanctions because of "the complexity of the subject matter jurisdiction issue where the action involved Indian land"); Keweenaw Bay Indian Cmty. v. Michigan, 152 F.R.D. 562, 564 (W.D. Mich. 1992) ("In view of the complexity of the issues, the lack of clear precedent, and the historical ambiguity involved in the issues presented by this case, the Court does not believe that sanctions are warranted."), aff'd, 11 F.3d 1341 (6th Cir. 1993).

Appellants and their counsel have made good-faith, nonfrivolous arguments distinguishing, calling for modifications, or seeking extensions of existing law. We, therefore, conclude the district court abused its discretion when it imposed sanctions upon Appellants and their counsel. Because we hold the district court abused its discretion when it imposed sanctions, we conclude the claims regarding the appellate-cost bond are moot.[7]

## C.    Cross-Appeal

Finally, we address Municipal Appellees' cross-appeal. Municipal Appellees argue that if we conclude the district court abused its discretion in imposing sanctions, Municipal Appellees are entitled to costs pursuant to Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920. The district court made no findings regarding the propriety of Municipal Appellees' motion for costs, deciding the motion was moot. We, therefore, remand to the district court for reconsideration and decision on Municipal Appellees' motion for costs. See Fogarty v. Piper, 767 F.2d 513, 515 (8th Cir. 1985) (noting

_____

[7]We, further, deny the outstanding motion to dismiss for failure to post the appellate-cost bond. While we recognize our authority to dismiss Appellants' claim on the merits for failure to post an appellate-cost bond, see 8th Cir. R. 3C, we decline to dismiss the merits appeal because the issues presented are important and Appellees suffered no prejudice. See, e.g., Perry v. Pogemiller, 16 F.3d 138, 139 n.1 (7th Cir. 1993) (denying a motion to dismiss as moot when the Seventh Circuit reached the merits of the appeal).

remand is appropriate when the district court makes no findings of fact or conclusions of law).

## III. CONCLUSION

For the reasons set forth above, we affirm the district court's decision to grant Appellees' motions to dismiss. But we conclude the district court abused its discretion when it imposed the heavy assessment of sanctions totaling $281,906.34. Therefore, we vacate the district court's order imposing sanctions and requiring an appellate-cost bond. We remand to the district court for limited consideration, consistent with this opinion, of Municipal Appellees' motion for costs pursuant to Rule 54(d) and 28 U.S.C. § 1920.

Each party shall bear his, her, or its own costs on appeal.

_____